# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| CATHRYN ELAINE HARRIS, § | | |
| MARIO HERRERA, and MARYAM § | | |
| HOSSEINY on behalf of themselves and § | | |
| all others similarly situated, § | | |
| § | | |
| Plaintiffs, § | | |
| § | CIVIL ACTION NO. 2:08-cv-00155 | |
| v. § | | |
| § | | |
| BLOCKBUSTER INC. § | | |
| § | | |
| Defendant. § | | |

## MOTION TO TRANSFER VENUE

Pursuant to 28 U.S.C. § 1404(a), and subject to and without waiving its right to compel individual arbitration pursuant to a mandatory arbitration agreement between the parties,[1] Defendant Blockbuster Inc. ("Blockbuster" or "Defendant") files this Motion to Transfer Venue to the United States District Court for the Northern District of Texas and would respectfully show the Court as follows:

## I. SUMMARY OF ARGUMENT

This action has no connection with the Marshall Division of the Eastern District of Texas. All of the Plaintiffs and Blockbuster reside in the Dallas Division of the Northern District of Texas. All of the conduct alleged in this case occurred, if anywhere, in the Dallas Division of the Northern District of Texas. Nearly all of the documents and witnesses are located in Dallas, Texas, and there are no documents or witnesses located in the Eastern District of Texas. Therefore, pursuant to 28 U.S.C. § 1404(a) and in light of the well-established private and public

---

[1] This dispute is covered by an individual arbitration agreement between Blockbuster and Plaintiffs. In the agreement, all parties to this action agreed that any disputes would be resolved by individual arbitration and pursuant to the Federal Arbitration Act. Blockbuster will file a motion to compel individual arbitration.

1

factors for transfer, Blockbuster respectfully requests that this Court transfer this case to the Dallas Division of the United States District Court for the Northern District of Texas.

## II. BACKGROUND

### A. Nature of This Action.

Plaintiff Cathryn Elaine Harris ("Harris") filed this action on April 9, 2008 against Blockbuster. On June 3, 2008, Harris filed a First Amended Complaint, naming Mario Herrera ("Herrera") and Maryam Hosseiny ("Hosseiny") as additional Plaintiffs. Significantly, Harris, Herrera, and Hosseiny are all Dallas County residents. *See* First Amended Complaint ("Compl.") ¶¶ 2-4.

Plaintiffs' claims arise from their use of Blockbuster's website and their participation in Blockbuster Online, which is an internet subscription service through which customers can rent and purchase DVDs. Blockbuster Online and Blockbuster itself are located at 1201 Elm Street, Dallas, Texas. *See* the Declaration of Ryan Miller ("Miller Dec.") ¶ 4, attached hereto as Exhibit A.

Plaintiffs' claims also relate to their accounts with Facebook. Facebook is a social networking website that allows users (like Plaintiffs) to communicate with friends, upload photographs, join networks, and operate a variety of user applications. With a Facebook account, Facebook users have control over how they share their own information and who can see it. All of the Plaintiffs maintain Facebook accounts, and they assert in this lawsuit that Blockbuster violated the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, by disclosing their "personally identifiable information" to their Facebook account and to others. Compl. ¶¶ 2-4. These claims lack merit. Nothing in the VPPA prohibits Blockbuster from communicating with its Online members through Facebook, and Blockbuster is not liable for its

2

members' decisions to further share information with their Facebook friends. On this motion, however, the merits of Plaintiffs' claims are not at issue.

**B.      The Location of the Parties and the Place of the Alleged Wrong.**

This case has no connection to the Eastern District of Texas, including the Marshall Division of the Eastern District of Texas. Miller Dec. ¶¶ 6-7. All of the parties are located in Dallas, and the conduct alleged in the Complaint took place within the Dallas Division of the Northern District of Texas.

Each Plaintiff alleges that he or she resides in Dallas County, within the Dallas Division of the Northern District of Texas. Compl. ¶ 2-4. Defendant Blockbuster also resides in Dallas County, with its nationwide headquarters and corporate offices located at 1201 Elm Street, Dallas, Texas 75270 – within the Dallas Division of the Northern District of Texas. Miller Dec. ¶ 4. In fact, Blockbuster's headquarters are approximately three blocks from the federal courthouse in Dallas. *Id.* This office employs approximately 530 Blockbuster employees, including corporate management, Blockbuster Online staff, Blockbuster's counsel, and all of the Blockbuster employees who are likely witnesses in this case. *Id.*

Blockbuster Online, a division of Blockbuster, is also located at 1201 Elm Street, Dallas, Texas 75270. *Id.* ¶ 5.      Blockbuster Online's only office and its employees are located there.[2] *Id.* All of Blockbuster Online's computers, data, and documents are located at 1201 Elm Street, Dallas, Texas. *Id.* Because the Complaint involves the alleged disclosure of Plaintiffs' information by Blockbuster Online, all of the conduct alleged of Blockbuster in the Complaint – if it occurred at all – could only have occurred in Dallas, Texas. *Id.*

---

[2] Blockbuster has a customer service call center in McKinney, Texas, located within the Eastern District of Texas, which does include customer service calls related to Blockbuster Online. None of the allegations in the Complaint even remotely relate to any conduct that could be claimed as taking place at Blockbuster's call center in McKinney.

3

Plaintiffs have alleged that Blockbuster's principal place of business is at P.O. Box 8019, McKinney, Texas 75070 in Collin County. Compl. ¶ 3. This allegation is false. Miller Dec. ¶ 3. Blockbuster's principal office is at 1201 Elm Street, Dallas, Texas, not McKinney, Texas. *Id*. ¶¶ 3-4. Blockbuster's facility in McKinney, Texas is the McKinney Distribution Center. *Id*. ¶ 6. The McKinney Distribution Center is a distribution center for Blockbuster stores. *Id*. There is also a customer service call center at that location. *Id*. Based on the allegations in the Complaint, the McKinney Distribution Center has no connection whatsoever to this case. *Id*. None of the conduct alleged of Blockbuster – even if true – could have occurred in McKinney, Texas. *Id*.

Facebook, Inc. is located on University Avenue in Palo Alto, California. *See* the Declaration of Frank Brame ("Brame Dec.") ¶ 7, attached hereto as Exhibit B. It is not alleged to have engaged in any relevant conduct that could have occurred in the Eastern District of Texas.

### C. Location of the Witnesses and Documents.

None of the relevant evidence in this case, including the witnesses and documents, is located in the Marshall Division of the Eastern District of Texas. Meanwhile, the parties and much of the evidence is located in the Dallas Division of the Northern District of Texas.

Blockbuster has at least four witnesses from Dallas that it would call in a trial of this matter. Brame Dec. ¶ 6. They are Ryan Miller, Chris Zarski, Drexel Owusu, and Phillip K. Morrow.[3] *Id.* Each of these witnesses is employed at 1201 Elm Street, Dallas, Texas. Miller

---

[3] Ryan Miller's job title is Director of Product Management Online. He is likely to testify regarding Blockbuster Online operations. Chris Zarski's job title is Director of Customer Acquisition. He is likely to testify regarding Blockbuster Online's marketing. Drexel Owusu's job title is Director of Strategic Planning. He is likely to testify regarding Facebook. Phillip K. Morrow's job title is Senior Vice President and Chief Information Officer. He is likely to testify regarding Blockbuster Online operations and management. *See* Brame Dec. ¶ 6.

4

Dec. ¶¶ 9-12. Their offices are approximately three blocks from the federal courthouse in Dallas, but approximately 150 miles from the federal courthouse in Marshall, Texas.[4] *Id*. Any other fact witnesses Blockbuster is likely to call in this case will also be located in Dallas, Texas. Brame Dec. ¶ 6.

In addition, any Blockbuster documents that would relate to the allegations in this case, such as Blockbuster Online's documents, are located at its downtown Dallas headquarters. Miller Dec. ¶ 5. This is also true for any other physical evidence that may be relevant, such as data, servers, or any other Blockbuster evidence. *Id*. If trial were held in Marshall, Blockbuster would incur additional expense and inconvenience hauling documents, exhibits, and other evidence from Dallas. *Id*. ¶ 13.

Plaintiff Harris also resides in Dallas County, approximately 150 miles from Marshall, Texas. Compl. ¶ 2. Her documents, computer, and other evidence are likely to be located where she resides – in Dallas County, Texas. *Id.* The same is also true for Plaintiffs Mario Herrera and Maryam Hosseiny, both of whom also reside in Dallas County, Texas. *Id.* at ¶¶ 3-4.

Facebook's witnesses would also likely find it more convenient to proceed in Dallas. Blockbuster likely will call at least two Facebook witnesses to testify in this matter. Brame Dec. ¶ 7. Facebook, Inc. is located on University Avenue in Palo Alto, California. *Id*. Each Facebook witness would likely need to travel from Palo Alto, California to Texas for hearings and trial. *Id*. American Airlines operates several non-stop flights per day to Dallas, Texas from San Jose International Airport, the nearest major airport to Palo Alto. *Id*. There are no flights between San Jose International and Marshall, Texas. *Id*.

---

[4] To the extent hearings are held in Texarkana, Texas, the courthouse there is approximately 180 miles from Blockbuster's headquarters in Dallas.

Lead counsel for the parties are located in Dallas. The offices of Vinson & Elkins, lead counsel for Blockbuster, are located at 2001 Ross Avenue in Dallas, approximately eight or nine blocks from the federal courthouse in Dallas. Brame Dec. ¶ 4. The Corea Firm's offices, lead counsel for Harris, are located a similar distance from the federal courthouse in Dallas. *Id.*

In short, this case could be tried much more conveniently in Dallas than in Marshall. *Id.* ¶ 8. The documents and witnesses are located at Blockbuster's headquarters in downtown Dallas. *Id.* A trial in Marshall would be approximately 150 miles away and would require additional substantial expense for travel, hotel, and time away from work for witnesses who live and work in Dallas. *Id.* Meanwhile, in Dallas, witnesses could return to work on a same-day basis and would not need to travel or stay overnight. *Id.* For these reasons, it would be significantly more convenient for these parties, witnesses, and counsel to try this case in Dallas. *Id.*

## III.   ARGUMENT AND AUTHORITIES

Under Fifth Circuit precedent, this case should be transferred to the United States District Court for the Northern District of Texas, Dallas Division. As further explained below, (1) venue is proper in the Northern District of Texas; (2) each of the private interest factors weighs in favor of transfer because all the relevant parties and evidence are located in Dallas; and (3) each of the public interest factors weighs in favor of transfer because this District and Division have no connection to this case and it would be inappropriate to impose the burden and expense of this matter on this District's courts and jurors.

### A.   The Legal Standard for Transfer Under 28 U.S.C. § 1404(a).

Section 1404(a) states:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). In applying this section, "the first determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). Second, the Court should determine the "convenience of parties and witnesses" based on several private and public interest factors. *Id*. The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case, and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*. In evaluating transfer under Section 1404(a), the Court considers these private and public factors, but none of them are given dispositive weight. *Id*.[5]

### B. Venue is Proper in Northern District of Texas.

This case could have been brought in the United States District Court for the Northern District of Texas. Venue is proper there under 28 U.S.C. § 1391. First, Blockbuster resides in the Northern District of Texas. *See* Miller Dec. ¶ 4; 28 U.S.C. § 1391(b)(1). Second, a substantial part of the alleged events or omissions giving rise to the claim occurred in the Northern District of Texas, (*see* 28 U.S.C. § 1391(b)(2)) – Blockbuster Online is located at Blockbuster's headquarters in Dallas, Texas; its employees work there; and any conduct it

---

[5] Some courts have also considered plaintiff's choice of forum as a factor. However, this factor "carries little significance" and is "closely scrutinized" where the plaintiff does not live in the forum. *See Kuhl v. City of Frisco*, No. 5:06cv253, 2007 WL 1051760, at *3 (E.D. Tex. April 3, 2007); *Empty Barge Lines II, Inc. v. Dredge Leonard Fisher*, 441 F. Supp. 2d 786, 797-98 (E.D. Tex. 2006) ("Where, as here, the plaintiff's chosen forum has no factual nexus to the case and none of the parties reside in that forum, the plaintiff's choice of forum carries very little significance . . .").

7

engaged in allegedly in violation of the VPPA must have taken place in Dallas, Texas. *See* Miller Dec. ¶ 5.

### C. The Private Interest Factors Support Transfer.

#### 1. The Relative Ease of Access to Sources of Proof.

The first private factor to be considered is the relative ease of access to sources of proof. *In re Volkswagen AG*, 371 F.3d at 203. In this case, nearly all of the relevant evidence is located in the Northern District of Texas, and there is no evidence located in the Eastern District of Texas. Therefore, it would be much more convenient and less costly to proceed in the Northern District.

First, the Plaintiffs all reside in Dallas County. Compl. ¶ 2-4. To the extent their computers, documents, and testimony are relevant in this case, those sources of proof are located in the Northern District of Texas. *Id*. Also, Blockbuster and Blockbuster Online are located in Dallas, Texas within the Northern District of Texas. Miller Dec. ¶¶ 4-5. All of the documents, data, computers, and other information that could be relevant in this case are located at 1201 Elm Street, Dallas, Texas. *Id*. Furthermore, all of the Blockbuster employees who could potentially testify in this matter are employed in Dallas, Texas. *Id*. Blockbuster has at least four witnesses from Dallas that it would call in a trial of this matter. Brame Dec. ¶ 6. They are Ryan Miller, Chris Zarski, Drexel Owusu, and Phillip K. Morrow. *Id*. Each of these witnesses is employed at 1201 Elm Street, Dallas, Texas, three blocks from the federal courthouse in Dallas, but approximately 150 miles from Marshall. Miller Dec. ¶¶ 9-12. It would be inconvenient, time-consuming, and expensive for these witnesses to testify in this case in Marshall, especially due to the cost of gas and other travel expenses. *Id*.

Facebook would also likely find it more convenient to proceed in Dallas because its witnesses would need to travel from Palo Alto, California to Texas for hearing and trial. Brame

8

Dec. ¶ 7. Facebook witnesses can fly directly to Dallas from San Jose International Airport, while there are no flights between San Jose International and Marshall, Texas. *Id*. As a result, any Facebook witness would have to travel the additional distance from DFW airport, or another airport, to Marshall for trial, incurring the additional airfare, hotel, and car expense that would be required.

As explained in *Volkswagen*, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* at 204-05. Here, Marshall, Texas is approximately 150 miles from Dallas, Texas. Plaintiff and Blockbuster's witnesses and evidence are only a short distance from the federal courthouse in Dallas, and any Facebook witnesses would likely have to travel less distance to get to Dallas. As a result, the documents, witnesses, and other evidence in this case are much more easily accessible from Dallas than Marshall, Texas, and it would be more convenient to proceed in Dallas, Texas.

### 2. The Availability of Compulsory Process To Secure the Attendance of Witnesses.

Another private factor is the availability of compulsory process to secure the attendance of witnesses. *In re Volkswagen AG*, 371 F.3d at 203. This factor, if anything, weighs in favor of transfer. Although Facebook witnesses from California would be outside the subpoena power of both the proposed and existing venues (*see* FED. R. CIV. P. 45(c)(3)(A)(ii)), the Northern District of Texas enjoys superior subpoena power to the Eastern District over every other potential witness that might be called. For example, to the extent witnesses like Ryan Miller, Chris Zarski, Drexel Owusu, or Phillip K. Morrow need to be compelled to attend, such witnesses are employed in Dallas more than 100 miles from Marshall, Texas. Miller Dec. ¶¶ 9-12. In

9

Marshall, a subpoena would either be outside the power of the court or subject to a motion to quash. FED. R. CIV. P. 45(c)(3)(A)(ii), (B)(iii).

### 3. The Cost of Attendance For Willing Witnesses.

The Court should also consider the cost of attendance for willing witnesses. *In re Volkswagen AG*, 371 F.3d at 203. This factor can weigh heavily in favor of transfer: "Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel with overnight stays increases the time which these fact witnesses must be away from their regular employment. Furthermore, the task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated . . ." *Id*. at 205. In this case, ***all*** the "willing" witnesses, including Harris, Herrera, Hosseiny, Blockbuster's corporate representative, Blockbuster's officers, and any other witnesses who will attend willingly, would have to travel from Dallas to Marshall for trial. As explained in the Declaration of Ryan Miller, it would be inconvenient, time-consuming, and expensive for Blockbuster witnesses to appear in Marshall. Miller Dec. ¶¶ 9-13. Due to the cost of gas and other travel expenses, it would be more expensive if the trial were held in Marshall. *Id*. With respect to party witnesses, including Plaintiffs themselves, this case could be tried much more conveniently in Dallas than in Marshall. Brame Dec. ¶¶ 6, 8. A trial in Marshall would require additional substantial expense for travel, meal and lodging, and time away from work, whereas, in Dallas, witnesses could return home or to work on the same day. *Id*. Thus, this private interest factor weighs substantially in favor of transfer.

### 4. All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive.

As shown above, proceeding in the Northern District of Texas, Dallas Division, would be

easier, more expeditious, and less expensive. Because this case is in the early stages, there would be no delay or prejudice if transfer is granted. *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 666 (E.D. Tex. 2007). As a result, this factor supports transfer.

### D. The Public Interest Factors Support Transfer.

#### 1. The Local Interest in Having Localized Interests Decided at Home.

For the purposes of 28 U.S.C. § 1404(a), the Court should consider "the local interest in having localized interests decided at home." *In re Volkswagen AG*, 371 F.3d at 203. This case has no "meaningful connection" to the Marshall Division of the Eastern District of Texas and instead involves solely parties located in Dallas and conduct that allegedly occurred in Dallas. *Id.* at 206. Accordingly, this public interest factor weighs heavily in favor of transfer. According to the Fifth Circuit, "jury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen AG*, 371 F.3d at 206 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)) (finding that location of the parties and witnesses in San Antonio area "weighs heavily" in favor of transfer from Marshall Division); *QR Spex, Inc.*, 507 F. Supp. 2d at 667. Here, because of the location of witnesses and the parties, the Northern District of Texas has the greater local interest in deciding this case. *QR Spex, Inc.,* 507 F. Supp. 2d at 667 (granting motion to transfer where local interest of the Eastern District of Texas was "nominal at best" and finding that "it would be improper to find that it is fair to place the burdens of jury duty on the citizens of this district instead of those in the Central District of California.").

##### a. This Case Arose Out of Conduct in the Northern District and Not the Eastern District. Therefore, the Burden of this Case Should Not Be Imposed on the Judge and Jurors of the Eastern District.

The people of Marshall, Texas have no connection to this case. Here, Blockbuster Online is accused of disclosing Plaintiffs' information in violation of the VPPA. Blockbuster Online is

located in Dallas County and the conduct alleged in the Complaint, if it occurred, must have occurred in Dallas County. Blockbuster Online's office and employees are all located in downtown Dallas. Miller Dec. ¶ 5. All of Blockbuster Online's computers, data, and documents are located at that office. *Id*. As a result, all of the conduct alleged of Blockbuster could only have occurred in Dallas, Texas. *Id.*

Moreover, Harris, Herrera and Hosseiny also all reside in Dallas County. Compl. ¶¶ 2-4. There are no allegations in the Complaint connecting them to the Eastern District in any way. This case concerns Dallas residents, accessing their computers there. When each Plaintiff logs onto Blockbuster Online, he or she accesses a webpage located in Dallas. Miller Dec. ¶ 5. When data is allegedly "disclosed" to Facebook, if at all, it would have to be transmitted in Dallas. *Id*. Thus, the actions alleged in this case occurred, if at all, in Dallas, Texas within the Northern District of Texas. It is inescapable, then, that the judges and jurors of the Eastern District of Texas should not be burdened with the time and expense of administering and deciding this case. *In re Volkswagen AG*, 371 F.3d at 206; *QR Spex, Inc.*, 507 F. Supp. 2d at 667.

### b. Venue in Class Actions Is Determined Based Only On the Named Parties.

Plaintiffs may not attempt, as they did in the venue section of the First Amended Complaint, to support venue by relying on allegations related to putative class members. Compl. ¶ 5. Potential class members are not considered for the purposes of venue. *United States ex rel. Lois Sero v. Preiser*, 506 F.2d 1115, 1129-1130 (2d Cir. 1974); *Morath v. Metro. Recovery Svcs., Inc.*, 2008 WL 954154, at *1 (S.D.N.Y. April 8, 2008) ("For class actions, the venue determination is made by reference to the named parties and their claims only."); *Joseph v. Liberty Nat'l Life Ins. Co.*, 2008 WL 2026006, at *1 (S.D. Fla. May 9, 2008) ("[I]n considering venue, the inquiry must be focused only on the named Plaintiffs and not the potential class

members."); *Smith v. Burlington N. Santa Fe Ry. Co.*, 2006 WL 3192545, at *2 (D.Kan. November 1, 2006) ("None of the named plaintiffs [traveled to Kansas]. Plaintiff's allegation that many of the potential members of the putative class performed trips in Kansas does not change that fact or make venue appropriate here.") 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1757 (noting that for venue "only the residence of the named parties is relevant"); JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 110.07.[6] Therefore, Plaintiffs' efforts to support venue based on the location of absent class members fails as a matter of law.[7]

### 2. The Administrative Difficulties Flowing From Court Congestion.

In considering a motion to transfer venue under Section 1404(a), the Court should also consider whether court congestion weighs in favor of transfer. *In re Volkswagen AG*, 371 F.3d at 203. Here, this factor weighs in favor of transfer because of the busy dockets of the Eastern District of Texas.

The Federal Court Management Statistics for the Northern and Eastern District show that the Eastern District has a relatively higher caseload than the Northern District. Due to the high number of complex matters being handled in the Eastern District, the weighted filings for 2007 show a substantially greater caseload per judge for courts in the Eastern District (674) versus the Northern District (470). Brame Dec. ¶ 9. On an unweighted basis, as the 2007 statistics show, the Northern District has a lower caseload per judge (324) than the Eastern District (419) and

---

[6] Moreover, the Plaintiffs are contractually prohibited from maintaining this case as a class action by virtue of the individual arbitration agreement and class waiver agreement applicable to users of Blockbuster Online.

[7] In addition, Plaintiffs' allegations regarding venue are defective for other reasons. First, under 28 U.S.C. § 1391, the residence of a plaintiff is not a basis to establish venue. Second, even if class allegations were relevant for venue purposes, Plaintiffs' venue allegations do not set forth how the VPPA was allegedly violated in the Eastern District. As explained above, all the allegations in this case are tied to Blockbuster's conduct – which necessarily would have occurred in Blockbuster's offices in Dallas.

faster median disposition rate (6.8 / 9.0 mos.), and a similar median time to trial (19.4 / 18.0 mos.). *Id.* Therefore, based on the available data, it would be just as efficient, if not more so, to handle this case in the Dallas Division of the Northern District of Texas. *Id.* The Northern District of Texas has no backlog or congestion of cases that would make transfer inappropriate. *Id.* Although, as a practical matter, this case is subject to mandatory arbitration pursuant to an agreement for individual arbitration, it is nonetheless true that this case could proceed quickly and efficiently in the Northern District of Texas. *Id.* As a result, this factor weighs in favor of transfer.

Finally, transfer is particularly appropriate under this factor because class action cases are complex matters. This case may impose a substantial burden on the time and resources of the Court that ultimately hears this case. It would be inappropriate and unfair to impose the burden and expense of this case on a forum, such as this one, that has little or no connection to this case. *In re Volkswagen AG*, 371 F.3d at 206.

### 3. The Familiarity of the Forum With the Law That Will Govern the Case and the Avoidance of Unnecessary Problems of Conflict of Laws of the Application of Foreign Law.

These final two factors do not weigh in favor of or against transfer of this case.

### IV. CONCLUSION AND PRAYER

In sum, this case involves Dallas parties litigating about Blockbuster Online accounts located in Dallas and the alleged conduct of Blockbuster Online employees located in Dallas. This case has no connection to the Marshall Division of this District. Wherefore, Blockbuster respectfully requests that the Court grant its Motion to Transfer Venue and all such other relief to which it may be entitled.

Respectfully submitted,

/s/ Michael L. Raiff
Michael L. Raiff
  State Bar No. 00784803
Frank C. Brame
  State Bar No. 24031874
VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
214.220.7705
214.999.7705 (fax)
mraiff@velaw.com

*ATTORNEYS FOR DEFENDANT BLOCKBUSTER INC.*

**CERTIFICATE OF CONFERENCE**

I hereby certify that, in accordance with Local Rule CV-7(h), counsel for Blockbuster has complied with the meet and confer requirement contained therein and that Blockbuster's Motion to Transfer Venue is opposed. I certify that on June 17, 2008, I personally conducted a telephone conference with Preston Dugas of the Corea Firm, counsel for Plaintiffs, and that counsel were not able to reach agreement on the Motion, resulting in an impasse, and leaving the issue for the Court to resolve.

/s/ Frank C. Brame w/ permission Michael L. Raiff
Frank C. Brame

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing Motion to Transfer Venue was served by ECF on the 17th day of June, 2008 on counsel of record for Plaintiffs.

/s/ Michael L. Raiff
Michael L. Raiff

Dallas 1402791v.1