IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CATHRYN ELAINE HARRIS, MARIO HERRERA, and MARYAM HOSSEINY on behalf of themselves and all others similarly situated, | § § § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 2:08-cv-00155 |
| v. | § § | |
| BLOCKBUSTER INC. | § § § | |
| Defendant. | § | |

## MOTION TO COMPEL INDIVIDUAL ARBITRATION

Defendant Blockbuster Inc. ("Blockbuster" or "Defendant") hereby moves to compel individual arbitration of plaintiffs Cathryn Elaine Harris, Mario Herrera, and Maryam Hosseiny's claims in this case and would respectfully show the Court as follows:[1]

## I. SUMMARY OF ARGUMENT

In this case, plaintiffs' claims arise from their use of Blockbuster's website and their participation in Blockbuster's online DVD subscription service, Blockbuster Online. Specifically, plaintiffs challenge a program that allows Blockbuster Online customers to share information with their friends through the social networking site, Facebook.com. Plaintiffs allege that this program violates the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. These claims, however, are covered by an individual arbitration agreement that plaintiffs accepted when they became registered users of Blockbuster's website and members of Blockbuster Online. That agreement, which broadly covers all claims relating to use of Blockbuster's website and its handling of personal information, explicitly prohibits plaintiffs

---

[1] In support of this motion, Blockbuster has submitted the Declaration of Jennifer L. Dineen ("Dineen Decl.") attached as Exhibit A.

1

from pursuing their claims through a class action or classwide arbitration. Numerous courts have confirmed that such agreements are binding, valid, and fully enforceable. Accordingly, plaintiffs should be compelled to individual arbitration.

## II. BACKGROUND

### A. Overview of the Case

According to the First Amended Complaint ("FAC"), plaintiffs are registered users of Blockbuster's website and members of Blockbuster Online. *See* FAC at ¶¶ 2-4. Blockbuster Online is a DVD rental subscription program in which members pay a flat monthly rate to receive DVDs through the mail. *See* Dineen Decl. ¶ 3. To select the DVDs they wish to receive, Blockbuster Online members use Blockbuster's website to create and manage their own "movie queue," removing or adding movies as they choose. *Id.* ¶ 4.

As Blockbuster Online members, plaintiffs' use of the Blockbuster website, including their management of their movie queues, is governed by a privacy policy, which contains the following provisions:

> *Third Party Features*. From time to time Blockbuster may include additional features and functionality from third parties on our Web Sites. ***Certain of these features and functions, may require Blockbuster to send selected information about you, such as information about your movie queue, to the third party. If you do not wish for Blockbuster to share this information, you will have a reasonable opportunity to opt-out of these third party features and functions***….
>
> *Public postings*. If you disclose your personal information in a manner that will be posted publicly such as in a product review your posting will be seen by others. In addition, if you elect to participate in certain community features offered from time to time, selected information about you, including information about your movie queue, may be shared with other participants in these community features. ***Also, Blockbuster may make it possible for certain third party web sites to be accessed directly from our Web Sites and for selected information about you to be provided to these third party web sites if you are also a user of these third***

> *party web sites. If a third party web site allows other users to view information about you (e.g., through posting to a publicly available profile page), the information provided by Blockbuster will be visible to other users of the third party web site.*

*See* Ex. 3 to Dineen Decl. (emphasis added). This privacy policy is part of the terms and conditions that plaintiffs agreed to when they became registered users of Blockbuster Online. Dineen Decl. ¶ 9; FAC ¶¶ 2-4. Despite this privacy policy, plaintiffs allege that Blockbuster improperly allowed them to share movie queue information with their friends and family through Facebook, in supposed violation of the VPPA. FAC ¶¶ 25-26, 28-31.

**B.    Plaintiffs' Individual Arbitration Agreement with Blockbuster**

All Blockbuster Online registered users sign-up for the program through Blockbuster's website, www.blockbuster.com. Dineen Decl. ¶¶ 5-6. Early in the sign-up process, prospective members are asked to provide basic information (e.g., name, email, selected password, etc.) that enables Blockbuster to open an account for them. *Id.* ¶ 6. Before they submit this information, all prospective members must "click" on a box that appears next to the following statement:

> I have read and agree to the blockbuster.com (including Blockbuster Online Rental) **Terms and Conditions** and certify that I am at least 13 years of age.

*Id*. ¶ 7. By following the **Terms and Conditions** hyperlink,[2] prospective members are taken to a page containing the full Terms and Conditions governing membership in Blockbuster Online and use of the Blockbuster website. *Id*. ¶ 8. These Terms and Conditions include the privacy policy mentioned above as well as an individual arbitration agreement, which provides the sole method for resolving disputes relating to the use of Blockbuster's website and Blockbuster Online:

---

[2] A "hyperlink" is "an electronic link providing direct access from one distinctively marked place…to another in the same or a different document." *See* Merriam-Webster Online Dictionary, www.merriam-webster.com/dictionary/hyperlink. Here, the hyperlink to the Blockbuster website Terms and Conditions is underlined and in blue type, obviously identifiable as a hyperlink to any computer user.

3

> **DISPUTE RESOLUTION**
>
> All claims, disputes or controversies (whether in contract or tort, pursuant to statute or regulation, or otherwise, and whether pre-existing, present or future) arising out of or relating to: (a) these Terms and Conditions of Use; (b) this Site; (c) any advertisement or promotion relating to these Terms and Conditions of Use or this Site; or (d) transactions effectuated through this Site, or (e) the relationship which results from these Terms and Conditions of Use (including relationships with third parties who are not party to these Terms and Conditions of Use) (collectively "Claims"), will be referred to and determined by binding arbitration governed by the Federal Arbitration Act and administered by the American Arbitration Association under its rules for the resolution of consumer-related disputes, or under other mutually agreed procedures. Because this method of dispute resolution is personal, individual and provides the exclusive method for resolving such disputes, you further agree, to the extent permitted by applicable laws, to waive any right you may have to commence or participate in any class action or class-wide arbitration against Blockbuster related to any Claim.
>
> This provision shall survive the termination of your right to use this Site.

*See id.* ¶ 8; Ex. 2 to Dineen Decl. If prospective members do not click the box, they are not allowed to continue with the sign-up process; instead, they are shown the same screen again, this time with the message, "*Please review and accept the terms and conditions*" appearing in red type at the top of the screen. Dineen Decl. ¶ 10.

Once prospective members click the Terms and Conditions box and complete the sign-up process, they receive a confirmation email from Blockbuster. That email contains another hyperlink to the Terms and Conditions–the same ones they read and accepted during the sign-up process. *Id.* ¶ 11. In addition, the Terms and Conditions are always accessible by hyperlink at the bottom on the Blockbuster website. *Id.*

4

## III. ARGUMENT AND AUTHORITIES.

By its terms, the individual arbitration agreement between plaintiffs and Blockbuster is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*. *See* Ex. 2 to Dineen Decl. ("All claims, disputes, and controversies…will be referred to and determined by binding arbitration governed by the Federal Arbitration Act[.]"). The FAA creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). As the Fifth Circuit has recognized, the FAA establishes "a strong presumption in favor of arbitration," and "individuals seeking to avoid the enforcement of an arbitration agreement face a high bar." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).[3] In determining whether to compel arbitration, courts applying this test need look only to "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Personal Sec. & Safety Sys., Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002); *Walker v. Countrywide Credit Indus., Inc.*, 2004 WL 246406, at *2 (N.D. Tex. Jan. 15, 2004) (Godbey, J.). Here, the undisputed evidence demonstrates that there is a binding, valid, and fully enforceable individual arbitration agreement and that the agreement covers plaintiffs' claims.

### A. There is a Binding, Valid, and Fully Enforceable Individual Arbitration Agreement Between Plaintiffs and Blockbuster.

The first part of the analysis under the FAA and Fifth Circuit case law looks to whether there is a valid arbitration agreement between the parties. This involves two issues: whether a binding agreement exists and whether that agreement is valid and enforceable. Here, an arbitration agreement was formed during the Blockbuster Online sign-up process when plaintiffs

---

[3] Arbitration is similarly favored under Texas law. *See, e.g.*, *Cantella & Co., Inc. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996) ("Federal and state law strongly favor arbitration.").

clicked on the box indicating that they had reviewed and accepted the Terms of Conditions, including the individual arbitration agreement. Under applicable law, Blockbuster's agreement is valid and fully enforceable as written, including its prohibition on participation in class actions and classwide arbitrations.

    1. <u>Plaintiffs clearly manifested their acceptance of Blockbuster's Terms and Conditions, including the individual arbitration agreement</u>.

Plaintiffs entered into a binding individual arbitration agreement with Blockbuster during the sign-up process for their Blockbuster Online memberships. As explained above and in the Declaration of Jennifer L. Dineen, plaintiffs could not have completed that process without clicking on the box next to the statement:

> I have read and agree to the blockbuster.com (including Blockbuster Online Rental) **Terms and Conditions**….

*See* Dineen Decl. ¶¶ 7-8, 10-12; Ex. 1. This type of agreement, often referred to as a "clickwrap agreement," was described several years ago by Judge Fitzwater, who explained:

> A "clickwrap agreement" allows a customer to assent to the terms of a contract by selecting an "accept" button on the website. [citation omitted] If the consumer does not accept the terms of the agreement, the web site will not complete the transaction.

*American Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*, 106 F. Supp. 2d 895, 904 (N.D. Tex. 2000); *see also Southwest Airlines Co. v. Boardfirst, L.L.C.*, 2007 WL 4823761, at *4 n.4 (N.D. Tex. Sept. 12, 2007) (Boyle, J.) (distinguishing "clickwrap" agreements from "browsewrap" agreements, where user does not have to click "yes" or "I agree");[4] *Recursion Software, Inc. v. Interactive Intelligence, Inc.*, 425 F. Supp. 2d 756, 782-83 (N.D. Tex. 2006) (Boyle, J.) (discussing caselaw and concluding that "clickwrap licenses, such as at issue here, are

---

[4] As noted above, in addition to the "clickwrap agreements" that plaintiffs accepted during the sign-up process, they also received a confirmation email containing the Terms and Conditions. Dineen Decl. ¶ 11. Furthermore, they manifested their acceptance of Blockbuster's Terms and Conditions, including the individual arbitration agreement, through their continued use of the website. *See* Dineen Dec. Ex. 2 at 5.

valid and enforceable contracts"). As Judge Boyle recently noted, "at least one Texas appellate court has upheld the enforceability of a [clickwrap] agreement." *See Recursion*, 425 F. Supp. 2d at 782-83. In that case, *Barnett v. Network Solutions*, 38 S.W.3d 200, 204 (Tex. App.—Eastland 2001, pet. denied), the court enforced a clickwrap agreement, stating that "[i]t was [the plaintiff's] responsibility to read the electronically-presented contract, and he cannot complain if he did not do so." *Id.* at 204.

Courts outside Texas, applying Texas law, have come to the same conclusion. Just a few months ago, a New Jersey federal court held that, under Texas law, "a party may manifest assent to a contract by clicking on an "I Accept" button in connection with an internet transaction." *Davis v. Dell, Inc.*, 2007 WL 4623030, *4 (D. N.J. Dec. 28, 2007). This decision was in accord with an earlier decision by an Illinois appellate court, *Hubbert v. Dell Corp.*, 835 N.E.2d 113 (Ill. App. Ct. 2005), which also analyzed the enforceability of a clickwrap agreement under Texas law. The *Hubbert* court noted that the company's terms and conditions appeared via hyperlink during the ordering process. *Id.* at 121. It also observed that a computer user would have known to click on the hyperlink to access the terms and conditions. *Id.*

In light of these cases, plaintiffs are bound by Blockbuster's Terms and Conditions, including the individual arbitration agreement, which they read and accepted before becoming registered users of Blockbuster's website and members of Blockbuster Online.

2. <u>The arbitration agreement is valid and fully enforceable as written, including the prohibition on participation in class actions and classwide arbitrations</u>.

The arbitration agreement that governs plaintiffs' claims in this case is valid and fully enforceable, as it provides a fair and efficient method to resolve individual consumer disputes such as this one. The Fifth Circuit has recognized that the FAA sets a "high bar" for plaintiffs seeking to avoid the enforcement of their arbitration agreements, even where, as here, "the

7

claims subject to arbitration are statutory in nature." *Carter*, 362 F.3d at 297. Indeed, the FAA was intended "'to reverse longstanding judicial hostility to arbitration agreements . . . and to place [them] upon the same footing as other contracts.'" *Id.* (quoting *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 89 (2000)). Accordingly, such agreements are susceptible only to general contract defenses such as fraud, duress, or unconscionability, and only to the extent that those defenses would apply to all contracts generally; arbitration agreements may not be singled out for heightened scrutiny. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996) (invalidating state law that singled out arbitration agreements for suspect status). The "party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter*, 362 F.3d at 297.

This is not one of the limited circumstances in which a general contract defense can be used to invalidate an otherwise enforceable arbitration agreement. Plaintiffs' acceptance of the arbitration agreement was not obtained by fraud or duress. Moreover, there is no basis for a finding of unconscionability—the doctrine most often used (albeit unsuccessfully) by plaintiffs seeking to avoid the enforcement of arbitration agreements.

In Texas, the doctrine of unconscionability has two components—procedural and substantive—and the plaintiff must establish both. *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002); *AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 198 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Procedural unconscionability "refers to the circumstances surrounding the adoption of the arbitration provision," whereas substantive unconscionability "refers to the fairness of the arbitration provision itself." *Halliburton*, 80 S.W.3d at 571. Here, plaintiffs cannot show either element. The arbitration agreement was clearly presented to them, conspicuously identified in the Terms and Conditions that each of them claimed to have read.

8

*See* Dineen Decl. ¶¶ 7-8, 10-11. Both the Texas Supreme Court and the Fifth Circuit have found that, under Texas law, such agreements are enforceable regardless of whether there is a disparity in bargaining power or whether the plaintiff actually read or understood the agreement. *See, e.g.*, *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 679 (Tex. 2006) ("The principles of unconscionability do not negate a bargain because one party to the agreement may have been in a less advantageous bargaining position . . . The agreement before us is clearly labeled as an agreement providing that disputes will be settled by arbitration.")*; In re U.S. Home Corp.*, 236 S.W.3d 761, 764 (Tex. 2007) (noting that arbitration agreements in contracts of adhesion are not automatically unconscionable); *see also Carter*, 362 F.3d at 301 (rejecting reliance on superior bargaining position to establish procedural unconscionability, noting that such an argument "has no support in Texas law").

Plaintiffs also cannot make the necessary showing of substantive unconscionability. The agreement between plaintiffs and Blockbuster is fair and reasonable. The designated arbitration rules, the American Arbitration Association's ("AAA") Consumer Rules, are well tailored to individual disputes such as this one. Under these rules, Blockbuster bears the burden of paying nearly all of the arbitration fees. Because their individual claims should not likely exceed $10,000, each plaintiff's share of the arbitrator's fees would be limited to $125—less than the filing fee they paid in this case. *See Carter*, 362 F.3d at 300 (holding that it was "impossible" for plaintiffs to demonstrate prohibitive costs under arbitration agreement where their fee burden was limited to $125).

Nor can plaintiffs contend that the agreement's prohibition on participation in class actions and classwide arbitrations renders the agreement unconscionable, as the precedents hold that it does not. In *AutoNation*, a Texas appellate court rejected a plaintiff's challenge to an

9

individual arbitration agreement, noting that class treatment of claims was merely a procedural device, which must bow to the FAA's mandate "to ensure that private agreements to arbitrate are enforced according to their terms." *AutoNation USA Corp.*, 105 S.W.3d at 199-200. As the *AutoNation* court recognized, "there is no entitlement to proceed as a class action." *Id.* at 200.

The Fifth Circuit has reached the same conclusion. *See Carter*, 362 F.3d at 298-300 (rejecting argument that arbitration agreement's class waiver deprived plaintiffs of substantive rights under federal law). So has the Northern District of Texas. *See Marsh v. First USA, N.A.*, 103 F. Supp. 2d 909, 922-24 (N.D. Tex. 2000) (Maloney, J.) (rejecting argument that federal statute's remedial purpose would be frustrated by enforcement of class waiver). Furthermore, courts across the country, applying Texas law, have uniformly held that individual arbitration agreements like Blockbuster's are valid and fully enforceable. *See Davis*, 2007 WL 4623030, at *6 ("[T]he Court finds that class action waivers are not unconscionable under Texas contract law."); *Omstead v. Dell, Inc.*, 473 F. Supp. 2d 1018, 1024 (N.D. Cal. 2007) ("Under Texas law, an arbitration clause with a class action waiver is not substantively unconscionable; rather, it is likely to be enforceable."); *Sherr v. Dell, Inc.*, 2006 WL 2109436, at *7 (S.D.N.Y. July 27, 2006) ("[p]laintiff is not entitled to a class action suit or class-wide arbitration to vindicate the rights of everyone else with a similar problem."); *Provencher v. Dell, Inc.*, 409 F. Supp. 2d 1196, 1204 (C.D. Cal. 2006) ("*AutoNation* is illustrative of how Texas courts are unwilling to strike down an arbitration provision and class action waiver on the ground of unconscionability."); *Fiser v. Dell Computer Corp.*, 165 P.3d 328, 339 (N.M. Ct. App. 2007) ("[W]e look to Texas law, and conclude that the arbitration clause is not unconscionable merely because [plaintiff] is precluded from bringing his claim as a class action."); *Hubbert*, 835 N.E.2d at 126 (relying on

*AutoNation* in rejecting argument that individual arbitration agreement was substantively unconscionable).[5]

Based on this overwhelming authority, it is clear that the arbitration agreement between plaintiff and Blockbuster, including the agreement's class waiver, is valid and fully enforceable.

**B.      The Individual Arbitration Agreement Covers Plaintiffs' Claims In This Case.**

Having established the existence of a valid arbitration agreement between the parties, the only remaining issue is whether the agreement covers plaintiffs' claims. In light of the FAA's strong pro-arbitration policy, "all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002). Here, the arbitration agreement is extremely broad, covering "***all*** claims, disputes or controversies," including statutory claims like plaintiffs', "arising out of or relating to" any of the following:

> (a) these Terms and Conditions of Use; (b) this Site; (c) any advertisement or promotion relating to these Terms and Conditions of Use or this Site; or (d) transactions effectuated through this Site; or (e) the relationship which results from these Terms and Conditions of Use (including relationships with third parties who are not party to these Terms and Conditions of Use)….

*See* Dineen Dec. ¶ 8; Ex. 2 (emphasis added). This broad agreement easily covers plaintiffs' claims in this case. All of the plaintiffs identify themselves as registered users of the Blockbuster website and Blockbuster Online. *See* FAC ¶¶ 2-4. Their claims arise from their use of the Blockbuster website and the way in which Blockbuster permits them to share information with third parties, namely Facebook and their Facebook community. Moreover, this case challenges Blockbuster's privacy policy and its compliance with that policy, which is part of the

---

[5] Even if Texas had a policy against class waivers in arbitration agreements, that policy would be preempted by the FAA's strong pro-arbitration policy. *See, e.g.*, *Gay v. CreditInform*, 511 F.3d 369, 394-95 (3d Cir. 2007) (holding that FAA preempts state law doctrine invaliding individual arbitration agreements).

11

Terms and Conditions referred to in the arbitration agreement. In covering all claims, including statutory claims, relating to those Terms and Conditions, website transactions, and relationships with third parties, the arbitration agreement covers plaintiffs' claims in this case.

## IV. CONCLUSION

In short, plaintiffs should not have filed this case in court and should not be pursuing class treatment of their claims at all. By doing so, they have breached their individual arbitration agreements with Blockbuster. Because these agreements are binding, valid, and fully enforceable, all three plaintiffs should be compelled by the Court to resolve their disputes through individual arbitration under the AAA's Consumer Rules. Pending that resolution, this case should be stayed.

                        Respectfully submitted,

                        /s/Michael L. Raiff
                        Michael L. Raiff
                          State Bar No. 00784803
                        Frank C. Brame
                          State Bar No. 24031874
                        Vinson & Elkins L.L.P.
                        2001 Ross Avenue, Suite 3700
                        Dallas, TX  75201
                        214.220.7705
                        214.999.7705 (fax)

                        *ATTORNEYS FOR DEFENDANT*
                        *BLOCKBUSTER INC.*

## CERTIFICATE OF CONFERENCE

     I hereby certify that, in accordance with Local Rule CV-7(h), counsel for Blockbuster has complied with the meet and confer requirement contained therein and that Blockbuster's Motion to Compel Individual Arbitration is opposed.  I certify that on July 29th, 2008, I personally conducted a telephone conference with Jeremy Wilson of the Corea Firm, counsel for Plaintiffs, and that counsel were not able to reach agreement on the Motion, resulting in an impasse, and leaving the issue for the Court to resolve.


                        /s/  Frank Brame w/permission Michael L. Raiff
                        Frank Brame

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion to Compel Individual Arbitration was served by ECF on the 30th day of July, 2008 on counsel of record for Plaintiffs.

/s/ Michael L. Raiff
Michael L. Raiff

1406673v.2