IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| CATHRYN ELAINE HARRIS, MARIO HERRERA, and MARY AM HOSSEINY on behalf of themselves and all others similarly situated,<br>    Plaintiffs,<br><br>v.<br><br>BLOCKBUSTER, INC.<br>    Defendant. | CAUSE NO. 2:08-cv-00155<br><br>JUDGE: DAVID FULSOM |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S
OPPOSED MOTION TO COMPEL ARBITRATION AND BRIEF IN SUPPORT**

TO THE HONORABLE JUDGE FOLSOM:

  Plaintiffs in the above-referenced suit files their Response to Defendant's Opposed Motion to Compel Individual Arbitration and Brief in Support, and would respectfully show the Court as follows:

**I.**

**PRELIMINARY STATEMENT**

  This lawsuit involves improper disclosures under the Video Privacy Protection Act ("VPPA").[1] Plaintiffs are customers of Blockbuster Online, a video rental service which mails video materials to customers in exchange for a fee. As described in Plaintiffs' First Amended Complaint, Blockbuster has been systematically violating the VPPA by routinely disclosing Plaintiffs' video rental history to a company called Facebook, an internet social-networking website. While Defendant contends that it is simply disclosing Plaintiffs' rental history directly to its customer, and that the consumer is *informed* of these disclosures (with an opportunity to opt-out), discovery in this case will clearly demonstrate that Blockbuster is actually disclosing this

---

[1] 18 U.S.C. § 2710.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL
INDIVIDUAL ARBITRATION**                                        Page 1

information directly to Facebook, a third party, without "informed, *written consent* of the consumer given *at the time the disclosure is sought*."[2] In fact, the very disclosures relied upon by Blockbuster in its Motion to Compel Individual Arbitration establish that Blockbuster is, in fact, disclosing the relevant information *to Facebook*, not to the customer:[3]

> Certain of these features and functions, may require Blockbuster to *send selected information about you, such as information about your movie queue, **to the third party*** . . .

> Also, Blockbuster may make it possible for certain third party web sites to be accessed directly from our Web Sites and for *selected information about you **to be provided to these third party web sites***

Thus, it is clear that Blockbuster is providing information to a third party -- Facebook. Notice to the customer months before the disclosure is not what the VPPA requires, but rather "informed, written consent of the consumer, given at the time of the disclosure." Blockbuster's violations of the VPPA are clear by their own admissions.

In any event, Defendant has filed this Motion to Compel Individual Arbitration relying on a purported agreement to arbitrate all disputes related to Plaintiffs' use of Blockbuster's website. This argument fails, however, because Defendants cannot meet their initial burden of showing a valid agreement to arbitrate these disputes for at least two reasons discussed below. First, the "Terms and Conditions" in which the arbitration agreement is contained is illusory and thus unenforceable.[4] Blockbuster has also failed to show sufficient manifestation of assent to the "Terms and Conditions" to make them an enforceable contract. Second, the agreement to arbitrate is substantively and procedurally unconscionable. These issues are discussed in more detail below.

---

[2] 18 U.S.C. 2710 (b)(2)(B) (emphasis added).
[3] *See* Defendant's Motion to Compel Individual Arbitration at 2-3.
[4] *Sterling Computer Systems of Texas, Inc. v. Texas Pipe Bending Co.,* 507 S.W.2d 282, 282 (Tex.Civ.App., 1974).( "[u]nder the express terms of the contract in question Sterling would not be liable for an outright refusal to perform the data processing services. This fact renders its obligation a nullity. . . . As a matter of law the contract in question fails for want of mutuality. The trial court correctly granted summary judgment for the defendant, Texas Pipe Bending Company.").

## II.

## ARGUMENTS AND AUTHORITY

A party attempting to compel arbitration must first establish that the dispute in question falls within the scope of a valid arbitration agreement.[5] If the other party resists arbitration, the trial court must determine whether a valid agreement to arbitrate exists.[6] The trial court's determination of the arbitration agreement's validity is a legal question subject to de novo review.[7] If the trial court finds a valid agreement, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration.[8] In order to establish a valid contract, Blockbuster must prove (1) an offer and acceptance; (2) meeting of the minds; (3) communication that each party has consented to the terms of the agreement; and, (4) consideration.[9]

### A. **Blockbuster has Failed to Demonstrate the Existence of a Valid Agreement to Arbitrate**

#### 1. **The Purported Arbitration Agreement is Illusory**

As Defendant describes in its Motion to Compel Individual Arbitration, this lawsuit involves a purported agreement to arbitrate all disputes arising from or relating to Plaintiff's use of Blockbuster's website. The arbitration agreement is contained within "Terms and Conditions" on Blockbuster's website, which Plaintiffs purportedly accepted by checking a box during the signup process indicating that they accepted the "Terms and Conditions" (which were not displayed on that page, but rather could be accessed by hyperlink.

Upon closer examination of the "Terms and Conditions", however, it becomes clear that this purported arbitration agreement is completely at the discretion of Blockbuster, who retains an

---

[5] *In re Oakwood Mobile Homes, Inc*., 987 S.W.2d 571, 573 (Tex.1999).
[6] *Id*.; TEX. CIV. PRAC. & REM. CODE § 171.021.
[7] *In re Kellogg Brown & Root*, 80 S.W.3d 611, 615 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding).
[8] *Oakwood*, 987 S.W.2d at 573.
[9] *See Veltmann v. Crowley Maritime Corp.*, 784 F. Supp. 366, 369 (E.D. Tex. 1992).

absolute right to modify or eliminate the arbitration provision, without notice to Plaintiffs. This unilateral right to modify the provision makes Blockbuster's obligations illusory.

Texas has expressly adopted the generally held rule that an arbitration agreement is not valid if it can be unilaterally modified by one party.[10] The rationale for this rule is that if one party can unilaterally modify the arbitration agreement, that party is not bound to the agreement, making their obligations illusory. The arbitration agreement at issue clearly reserves to Blockbuster the right to unilaterally modify or even eliminate it. The arbitration agreement in this case is contained in Blockbuster's "Terms and Conditions," a copy of which it attached to Blockbuster's Motion to Compel Individual Arbitration. The first paragraph, fifth sentence of those "Terms and Conditions" provides as follows: "*Blockbuster may at its sole discretion modify these Terms and Conditions of Use at any time and such modifications <u>will be effective immediately upon being posted on this site</u>.*"[11] Further down this same page, under the heading of "Changes to Terms and Conditions" the following language appears: "*Blockbuster may <u>at any time, and at its sole discretion</u>, modify these Terms and Conditions of Use, including without limitation the Privacy Policy, <u>**with or without notice**</u>. <u>Such modifications will be effective immediately upon posting.</u>*"[12] Blockbusters "Online Rental Terms and Conditions" contain the following language: *"These Online Rental Terms and Conditions are subject to change by Blockbuster at any time, in its sole discretion <u>with or without advance notice</u>."*[13]

---

[10] *In re Palm Harbor Homes, Inc.* 195 S.W.3d 672, 677 (Tex.,2006) ("We have recognized that an arbitration agreement may be illusory if a party can unilaterally avoid the agreement to arbitrate. See *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 230 & n. 2 (Tex.2003). In *Davidson*, we remanded a case for the trial court to determine whether an ambiguous contract allowed an employer to modify or terminate an arbitration agreement at any time. Id. at 230-31. We noted that most courts which have considered the issue have held that if one party retains a unilateral, unrestricted right to terminate an arbitration agreement, the agreement is illusory.").

[11] *See* Exhibit A to Defendant's Motion to Compel Arbitration (doc. 15-2), Exhibit 2, page 1 (emphasis added).

[12] *See id.* (emphasis added).

[13] *See id.* at 5 (emphasis added).

Clearly these provisions allow modification or elimination of the arbitration provision at issue in this case. Particularly troublesome is the second set of language quoted which states that the "Terms and Conditions" can be modified *without notice.* The arbitration provision in Blockbuster's "Terms and Conditions" purports to apply to "[a]ll claims . . . whether pre-existing, present or future."[14] Thus, should Blockbuster decide that it wishes to no longer be bound to this arbitration provision, it need only carve out the type of claim it wishes to pursue in Court and those changes to the policy would be binding at the time they are posted to Blockbuster's website. And the new provisions would apply to all claims, pre-existing, present, or future. This is equally true for the class-action waiver contained in the arbitration agreement. The class action waiver specifically states that Plaintiffs, but not Blockbuster are prohibited from filing class claims.[15] In fact, the class-waiver specifically mentions that because this is the "exclusive method for resolving such disputes" . . . **_you further agree_** [to waive the class action device]." This language alone suggests that only Plaintiffs are bound by the arbitration agreement regardless of any modification by Blockbuster.

Thus, while there is evidence that the arbitration provision only applies to Plaintiffs and not Blockbuster, it is beyond dispute that Blockbuster has retained a unilateral right to modify or eliminate the arbitration provision. Under either scenario, Blockbuster is not bound by the provision and it therefore lacks mutuality of obligation. This lack of mutuality of obligation renders the arbitration agreement illusory.

---

[14] *See id.*, Dispute Resolution (page 4).
[15] *See id.* ("Because this method of dispute resolution is personal, individual and provides the exclusive methods for resolving such disputes, you further agree, to the extent permitted by applicable laws, to waive any right you may have to commence or participate in any class action or class-wide arbitration against blockbuster related to any Claim.")

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL**
**INDIVIDUAL ARBITRATION**                                                                                                        Page 5

## 2. The Underlying Contract is Also Illusory and Cannot Provide Consideration for the Arbitration Provision

While the Texas Supreme Court appeared to recognize the generally invalidity of arbitration agreements, which do not bind parties equally in 2006,[16] prior precedent has clarified how this rule is to be applied when dealing with cases of non-stand-alone arbitration agreements: "[i]n the context of stand-alone arbitration agreements, binding promises are required on both sides as they are the only consideration rendered to create a contract. . . . But when an arbitration clause is part of an underlying contract, the rest of the parties' agreement provides the consideration."[17]

Thus, for a non-standalone arbitration agreement to have sufficient mutuality of obligation to be enforceable, the underlying contract of which it is a part must have sufficient mutuality to be enforceable. In other words, the underlying contractual obligations must be sufficiently binding on Blockbuster to create enforceable legal obligations. Otherwise, the underlying contract is illusory and lacks the consideration required to make the arbitration agreement valid.

A closer examination of Blockbuster's purported "contract" (supposedly contained in its "Terms and Conditions") reveals that Blockbuster has completely absolved itself of any binding obligations, making the entire agreement between Plaintiffs and Blockbuster illusory and invalid. Texas Courts have held that where a party limits their liability to the point of being immune from performance of their contractual obligations, the *entire contract* is illusory and a nullity. In *Sterling Computer Systems of Texas, Inc. v. Texas Pipe Bending Co.*,[18] the contract at issue contained a provision which stated that "SCS (Sterling) shall not be liable for its failure to profide (sic) the

---

[16] *In re Palm Harbor Homes, Inc.* 195 S.W.3d 672, 677 (Tex.,2006) ("We have recognized that an arbitration agreement may be illusory if a party can unilaterally avoid the agreement to arbitrate. See *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 230 & n. 2 (Tex.2003). In *Davidson*, we remanded a case for the trial court to determine whether an ambiguous contract allowed an employer to modify or terminate an arbitration agreement at any time. Id. at 230-31. We noted that most courts which have considered the issue have held that if one party retains a unilateral, unrestricted right to terminate an arbitration agreement, the agreement is illusory.").

[17] *In re AdvancePCS Health L.P.* 172 S.W.3d 603, 607 (Tex. 2005).

[18] 507 S.W.2d 282, 282 (Tex.Civ.App., 1974)

services herein and shall not be liable for any losses resulting to the client (Texas Pipe Bending) or anyone else by reason of such failure." The Court held that:

> "[u]nder the express terms of the contract in question Sterling would not be liable for an outright refusal to perform the data processing services. This fact renders its obligation a nullity. . . . As a matter of law the contract in question fails for want of mutuality. The trial court correctly granted summary judgment for the defendant, Texas Pipe Bending Company."[19]

A close examination of the language contained in the "Terms and Conditions" reveals that Blockbuster is in no way bound to any obligation. Blockbuster fully disavows any liability for any failure to adhere to the "Terms and Conditions" mandating that "[i]n no event shall Blockbuster . . . **_be liable_** for any direct, indirect, special, incidental, consequential, punitive or aggravated damages . . .or any other damages of any kind, arising out of or in connection with: this site. . . . This **_exclusion of liability_** shall apply to the fullest extent permitted by law.[20] And Blockbuster has titled this section "**_Limitation of Liability_**" while surreptitiously inserting language at the end of the paragraph *excluding all liability*. This provision goes far beyond the normal limitation of liability. Blockbuster has essentially made itself immune from compliance with its own "Terms and Conditions." This fact alone is sufficient to determine that Blockbuster's overall "contract" fails for want of mutuality. But there is more.

Blockbuster is also in no way bound to continue offering an "account" to Plaintiffs as Blockbuster, on page five of the "Terms and Conditions," states that it "may at any time *and at its sole discretion* terminate your [Plaintiff's] right to use this Site."[21] Blockbuster also "may suspend or cancel a BLOCKBUSTER Online membership account, or otherwise restrict [Plaintiffs'] use of BLOCKBUSTER Online, *in Blockbuster's sole discretion, with or without cause.*"[22] Blockbuster "reserves the right to suspend or end the BLOCKBUSTER Online service (including, without

---

[19] *See id.*
[20] *See* Exhibit A to Defendant's Motion to Compel Arbitration (doc. 15-2), Exhibit 2, page 4 (emphasis added).
[21] *See id.,* page 5.
[22] *See id.,* page 12.

limitation, ceasing to offer one or all of BLOCKBUSTER Online membership plans, BLOCKBUSTER Total Access, promotional offers or free trials) *without prior notice, in Blockbuster's sole discretion.* Blockbuster also reserves the right to suspend or end the BLOCKBUSTER Online service or certain aspects thereof such as BLOCKBUSTER Total Access in certain geographic areas *without prior notice, in Blockbuster's sole discretion*."[23] Blockbuster also disavows any warranties regarding not only the quality of its products but also the truthfulness of any assertions contained on its website.[24] Of course, all of these provisions must also considered alongside Blockbuster's complete and unfettered, unilateral rights, as discussed above, to completely modify or eliminate the "Terms and Conditions" at will, without notice, and with the changes being effective as soon as Blockbuster posts them to its website.

These contract provisions make it clear that Blockbuster has absolved itself of any obligations regarding its relationship with Plaintiffs. The "exclusion of liability" for its failure to perform any of the supposed "contractual" duties is indistinguishable from the exclusion found in the contract provided in *Sterling Computer*. This exclusion of liability, particularly when coupled with the broad and sweeping reservations to Blockbuster contained in this agreement clearly make this agreement illusory on Blockbuster's end. Blockbuster is under no obligation to do anything and can completely change the terms of its supposed agreement with Plaintiffs at its sole discretion *and the changes take effect immediately*. And these changes can be made *with or without notice* to Plaintiffs. It is true the Blockbuster attempts to impose on Plaintiffs a duty to monitor its website

---

[23] *See id.*
[24] THIS SITE, ITS CONTENTS, AND ANY SOFTWARE, PRODUCTS, AND SERVICES OFFERED OR CONTAINED HEREIN ARE PROVIDED ON AN "AS IS" BASIS . . .. BLOCKBUSTER INC. MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND WITH RESPECT TO THIS ITS CONTENTS, OR SUCH SOFTWARE PRODUCTS AND SERVICES, AND DISCLAISM ALL SUCH REPRESENTATIONS AND WARRANTIES . . . IN ADDITION, BLOCKBUSTER DOES NOT REPRESENT OR WARRANT THAT THE INFORMATION ACCESSIBLE VIA THIS SITE IS ACCURATE, COMPLETE OR CURRENT. PRICE AND AVAILABILITY INFORMATION IS SUBJECT TO CHANGE WITHOUT NOTICE.

and to discontinue using the site if they do not agree with any changes, but this does not alter the fact that Blockbuster asserts that any changes are effective immediately upon being posted to its website, before Plaintiffs have even had a chance to review the changes. Blockbuster is also under no obligation to highlight any changes to its policy in any way. Thus, Plaintiffs presumably have a duty, each time they use Blockbuster's website, to re-read over twenty pages of terms and conditions and compare them the previous terms and conditions (hopefully Plaintiffs kept a copy) to see if their agreement has been altered in any way.

Blockbuster will undoubtedly respond with cases stating that ordinarily defenses to a contract as a whole (as opposed to challenges to the arbitration provision) should be referred to arbitration. This, however, is not such a case. Here, the arbitration itself lacks mutuality of obligation. Thus, the only way to for Blockbuster to establish sufficient consideration for the agreement is to look to the underlying contract. Thus, it is entirely proper to consider whether the underlying "Terms and Conditions" provide sufficient mutuality of obligation to save the arbitration agreement. It does not. The arbitration agreement is illusory because Blockbuster retains the absolute, unilateral right to modify it, at its sole discretion. If it is to be considered a valid agreement, it must be because of some non-illusory obligation of Blockbuster pursuant to the underlying contract. As was just discussed, however, the entire agreement is illusory as to Blockbuster. For these reasons, Blockbuster has failed to meet its initial burden of demonstrating the existence of a valid arbitration agreement.

### 3. **Blockbuster Has Not Showed Sufficient Manifestation of Assent.**

The second (and perhaps more fundamental) reason there is no valid contract is that Blockbuster has failed to demonstrate that Plaintiffs actually agreed to the "Terms and Conditions." Blockbuster argues that the "clickwrap" agreement is valid under Texas law to create a binding contract because Plaintiffs were required to click on a box on their computer screen indicating their

acceptance of the "Terms and Conditions" which, although available to be viewed by Plaintiffs, were not actually on the screen at the time. Blockbuster presents a single case from Texas holding that "clickwrap" agreements can constitute a valid contract. Unlike the agreements in those cases, however, the click-through promulgated by Blockbuster did not require the user to scroll through the agreement before clicking through.[25] Thus, this case is not applicable and Blockbuster has failed to demonstrate that Plaintiffs actually agreed to the "Terms and Conditions" in the first place.

B.    **The Arbitration Provision is Unconscionable.**

1.    **The Agreement Is So One-Sided That It Is Unconscionable.**

Even if the Court concludes that a valid arbitration agreement exists, the agreement is unconscionable. Under Texas law, in the arbitration context, the Court can consider substantive unconscionability as well as procedural unconscionability.[26] Plaintiffs can establish both.

Under Texas law "the test for substantive unconscionability is whether, "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." [27] In fact, the Fifth Circuit Court of Appeals has recently upheld a lower court ruling in Louisiana that an arbitration agreement which only bound the consumer was unconscionable due to its one-sidedness.[28] This holding is in line with a number of state and federal

---

[25] *See Recursion Software, Inc. v. Interactive Intelligence, Inc.,* 425 F.Supp.2d 756, 781 (N.D. Tex. 2006) (user required to scroll to bottom of web page before agreeing to license terms); *Barnett v. Network Solutions, Inc.*, 38 S.W.3d 200, 204 (Tex. App.—Eastland 2001, pet. denied)("By the very nature of the electronic format of the contract, Barnett had to scroll through that portion of the contract containing the forum selection clause before he accepted its terms.").

[26] *See In re Halliburton,* 80 S.W.3d at 572 (clarifying that courts may address claims that an arbitration clause is substantively unconscionable).

[27] *In re Palm Harbor Homes, Inc*. 195 S.W.3d 672, 678 (Tex.,2006)(citing *In re FirstMerit Bank*, 52 S.W.3d at 757).

[28] *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC* 379 F.3d 159, 168 (C.A.5 (La.),2004)

courts around the country.[29] Furthermore, the terms and conditions constitute a contract of adhesion under Texas law where they constitute a "standardized contract form[ ] offered to consumers of goods and services on an essentially 'take it or leave it' basis ... limit[ing] the duties and liabilities of the stronger party."[30]

This arbitration provision is procedurally unconscionable because it is presented on a "take it or leave it" basis by a party with far superior bargaining power. The arbitration provision is also buried on the fourth page of over twenty pages of terms and conditions. There is no bold print or other indication to make this particularly important term stand out in the "Terms and Conditions." Interestingly, Blockbuster places language in two places on the first page of the "Terms and Conditions" regarding its unilateral ability to amend or alter the agreement, but chooses to place the arbitration provision on page four of the agreement. In fact, the "Disclaimer of Warranties" and "Limitation of Liability" provisions of the "Terms and Conditions" (also on page 4) are written entirely in uppercase lettering immediately before the arbitration agreement, almost as though they were designed to distract the reader from the "Dispute Resolution" provision. Over half of the typeface on page 4 is in uppercase typeface, yet the arbitration provision is not. Despite this, Blockbuster contends that its arbitration agreement is "conspicuously identified." This is certainly not the case. "Conspicuously identified" would be all capitalization or bold typeface like the other provisions on page 4 (which are apparently more important to Blockbuster).

Finally, the arbitration agreement was part of a "Terms and Conditions" screen which was not even visible when Plaintiffs checked a box indicating their agreement to it. To see the "Terms and Conditions" Plaintiffs would have been required to go to another page on Blockbuster's

---

[29] *See, e.g. Zuver v. Airtouch Communications, Inc.* 153 Wash.2d 293, 318, 103 P.3d 753, 767 (Wash. 2004)("Rather, she contends that the *effect* of this provision is so one-sided and harsh that it is substantively unconscionable. We agree.").

[30] *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 355 (Tex.1987).

website. Although Texas state Courts have upheld these types of "clickwrap" agreements, the cases involved a situation where the plaintiff was required to scroll through the terms and conditions and after scrolling to the end was asked whether they agreed. The absence of such a scroll feature, along with the other infirmities described above, further contribute to the unconscionability of the arbitration provision at issue. [31] This renders it procedurally unconscionable. However, it is the provisions contained in the arbitration provision that make it substantively unconsctionable.[32]

As noted above, the arbitration provision at issue inures only to Blockbuster's benefit, who retains unilateral discretion to modify or eliminate this provision at will. This combined with the fact that Blockbuster has reserved to itself the right to modify any contract provision makes this agreement unconscionable. When the "exclusion of liability" provisions are considered, the question begins to emerge: what exactly is left to arbitrate anyway? The next section of this argument will discuss in detail the fact that this arbitration provision also contains a completely one-sided class action ban. Under these circumstances, however, this arbitration provision is onerous and unfair. It is so one-sided that it should not be enforceable.

While Blockbuster has done a good job of presenting cases which hold that any one of these scenarios in isolation are insufficient to hold an arbitration agreement to be unconscionable, none of the cited cases consider all of these issues together. Plaintiffs urge this Court to consider the totality of the circumstances presented. Together these issues all lead to the same conclusion. A very large company pushing the envelope on what is considered acceptable in an arbitration agreement.

---

[31] *See Recursion Software, Inc. v. Interactive Intelligence, Inc.,* 425 F.Supp.2d 756, 781 (N.D. Tex. 2006) (user required to scroll to bottom of web page before agreeing to license terms); *Barnett v. Network Solutions, Inc.*, 38 S.W.3d 200, 204 (Tex. App.—Eastland 2001, pet. denied)("By the very nature of the electronic format of the contract, Barnett had to scroll through that portion of the contract containing the forum selection clause before he accepted its terms.").

[32] *See Holeman v. Nat'l Bus. Inst., Inc.,* 94 S.W.3d 91, 99 (Tex.App.2002) (noting that disparate bargaining power is not enough to render a contract unconscionable, and stating that "it is the unfair use of, not the mere existence of," disparity in bargaining power that renders a contract unconscionable).

### 2. The Agreement is Unconscionable Because it Contains a One-Sided Class Action and Class Arbitration Prohibition.

There is also the issue that there is a class-action and class arbitration waiver which by its express terms only applies to Plaintiffs, not Blockbuster. This further contributes to the one-sided (and therefore unconscionable) nature of this agreement. Blockbuster is correct that Texas Courts have found that class action waivers are permissible.[33] Texas Courts have not considered the validity of a one-sided class action waiver. Texas Courts have, however, noted that class-action waivers may be invalid in certain circumstances.[34] This should be one of those circumstances.

Just six weeks ago, the New Mexico Supreme Court ruled that class action waivers are against public policy in the State of New Mexico and refused to apply a choice of law provision mandating application of Texas law because, to do so would likely require upholding the class action wavier.[35] According to the New Mexico Supreme Court:

> The opportunity to seek class relief is of particular importance to the enforcement of consumer rights because it provides a mechanism for the spreading of costs. The class action device allows claimants with individually small claims the opportunity for relief that would otherwise be economically infeasible because they may collectively share the otherwise prohibitive costs of bringing and maintaining the claim. See, e.g., 1 ALBA CONTE & HERBERT B. NEWBERG, Newberg on Class Actions § 1.6, at 26 (4th ed.2002). "In many cases, the availability of class action relief is a *sine qua non* to permit the adequate vindication of consumer rights." *State ex rel. Dunlap v. Berger*, 211 W.Va. 549, 567 S.E.2d 265, 278 (2002). "The class action is one of the few legal remedies the small claimant has against those who command the status quo." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 186, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (Douglas, J., dissenting in part).

Defendant cited the lower appellate court opinion in this case for the prospect that class action waivers are not unconscionable, but failed to cite this case, presumably because it is so new.

---

[33] *AutoNation USA Corp. v. Leroy,* 105 S.W.3d 190, 199-201 (Tex.App.2003) (contractual prohibition of class actions not fundamentally unfair or violative of public policy) ("Because we conclude that the class action ban is contrary to fundamental New Mexico public policy, we reverse.").

[34] *AutoNation USA Corp. v. Leroy* 105 S.W.3d 190, 200 (Tex.App.-Houston [14 Dist.],2003) ("[t]here may be circumstances in which a prohibition on class treatment may rise to the level of fundamental unfairness.")

[35] *Fiser v. Dell Computer Corp.* 142 N.M. 331, 165 P.3d 328 (N.M.App.,2007).

New Mexico is clearly aligning itself with an emerging trend in the law to disfavor class action waivers. The Washington Supreme Court has also noted the "increasing number of courts have found class action waivers in arbitration clauses substantively unconscionable" noting that "there is a clear split of authority."[36] New Mexico, along with other states[37] has recognized the importance of the class action device to resolve these types of consumer disputes. And these Courts have recognized that allowing the waiver of class action effectively prevents litigants from seeking redress for small dollar consumer claims such as the claims brought in this lawsuit.

Plaintiffs submit that, should the Texas Supreme Court be presented with such a one-sided waiver of the class action device presented in this case, it would recognize the important policy implications of allowing such waivers to stand. This class action waiver, incidentally, also purports to waive any class arbitration. Thus, even if the American Arbitration Association allowed class arbitrations, those too would be waived. One-sided class action and class arbitration waivers are contrary to public policy and, as recognized by the New Mexico Supreme Court and numerous others, should be considered unconscionable. This is particularly true where, here, Plaintiffs seek

---

[36] *Scott v. Cingular Wireless* 160 Wash.2d 843, 850-851, 161 P.3d 1000, 1004 (Wash.,2007)(citing *E.g., Ting v. AT & T*, 319 F.3d 1126, 1150 (9th Cir.2003); *Skirchak v. Dynamics Research Corp.*, 432 F.Supp.2d 175, 181 (D.Mass.2006); *Edwards v. Blockbuster Inc.*, 400 F.Supp.2d 1305, 1309 (E.D.Okla.2005); *Luna v. Household Fin. Corp. III*, 236 F.Supp.2d 1166, 1178 (W.D.Wash.2002); *Lozada v. Dale Baker Oldsmobile, Inc.*, 91 F.Supp.2d 1087, 1105 (W.D.Mich.2000); *Leonard v. Terminix Int'l Co., L.P.*, 854 So.2d 529, 538 (Ala.2002); *Discover Bank v. Superior Court of Los Angeles*, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (2005); *Powertel, Inc. v. Bexley*, 743 So.2d 570, 576 (Fla.Dist.Ct.App.1999); *Kinkel v. Cingular Wireless*, L.L.C., 223 Ill.2d 1, 47, 857 N.E.2d 250, 306 Ill.Dec. 157 (2006); *Whitney v. Alltel Commc'ns, Inc.*, 173 S.W.3d 300, 314 (Mo.Ct.App.2005); *Muhammad v. County Bank of Rehoboth Beach*, 189 N.J. 1, 20-21, 912 A.2d 88 (2006); Schwartz v. Alltel Corp., 2006-Ohio-3353 ¶ 36, 2006 WL 2243649 (Ohio Ct.App.); *Vasquez-Lopez v. Beneficial Or., Inc.*, 210 Or.App. 553, 572, 152 P.3d 940 (2007); Thibodeau v. Comcast Corp., 2006 PA Super. 346, ----, 912 A.2d 874, 886; see also *Kristian v. Comcast Corp.*, 446 F.3d 25, 64-65 (1st Cir.2006) (struck class action waiver for preventing vindication of *851 statutory rights); *Wis. Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶ 73, 290 Wis.2d 514, 714 N.W.2d 155 (questioning whether class action waiver in arbitration clause would be enforceable).

[37] *Cooper v. QC Financial Services, Inc.* 503 F.Supp.2d 1266, 1286 (D.Ariz.,2007(holding class action wavier to be unconscionable) ("The aggregation of individual claims in the context of a classwide suit is an evolutionary response to the existence of injuries unremedied by the regulatory action of government. Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device) *Szetela v. Discover Bank*, 97 Cal.App.4th 1094, 118 Cal.Rptr.2d 862 (Cal.Ct.App.2002), and *Powertel v. Bexley*, 743 So.2d 570 (Fla.Dist.Ct.App.1999).

to represent a nationwide class of Blockbuster customers.  Given the large number of states to hold that waiver of the class action device renders an arbitration agreement unconscionable, Plaintiffs ask this Court to clarify that prior Texas jurisprudence on this issue does not allow such a one-sided class action and class arbitration waiver.  Because the class action waiver is so intertwined with the arbitration agreement in this case, it cannot be severed.[38]

### 3. The Agreement Is Also Unconscionable Because It Waives Important Federal Statutory Rights.

Federal and Texas law also recognize that an arbitration agreement can be unconscionable where it waives important statutory rights.[39]  This decision is in accord with other States' decisions as well.[40]  As discussed above, this lawsuit involves repeated and systematic violations of the Video Privacy Protection Act.[41]  Not only does Blockbuster attempt to limit the remedies available to Plaintiffs, it also purports to disavow any liability for any action (or inaction) on its part.  Blockbuster's "exclusion of liability" provision completely thwarts the purpose of the Video Privacy Protection Act, which specifically provides for liquidated damages because Congress anticipated that many people would be unable to demonstrate actual damages as a result of violations of this important privacy interest.

This has to be coupled with the class action waiver in this case.  Together these clauses effectively cut off any meaningful redress of Plaintiffs' grievances under federal law, rendering the arbitration clause unconscionable.[42]

---

[38] *Fiser v. Dell Computer Corp*. 142 N.M. 331, 165 P.3d 328 (N.M.App.,2007).("Here, the class action ban is part of the arbitration provision and is central to the mechanism for resolving the dispute between the parties; therefore, it cannot be severed.").

[39] *See* In re Luna, 175 S.W.3d 315, 324 (Tex.App.-Houston [1st Dist.] 2004, orig. proceeding [mand. pending] ) (holding the preclusion of two statutory remedies supported a finding that an arbitration agreement was substantively unconscionable as a whole).

[40] *Powertel v. Bexley*, 743 So.2d 570 (Fla.Dist.Ct.App.1999).

[41] 18 U.S.C. § 2710.

[42] *Kinkel v. Cingular Wireless LLC* 223 Ill.2d 1, 40, 857 N.E.2d 250, 274-274, 306 Ill.Dec. 157, 181 (Ill.,2006)(discussing *AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 200 (Tex.App.2003) ("While there may be

Respectfully submitted,

**THE COREA FIRM, P.L.L.C.**


/s/ Jeremy R. Wilson_____
Jeremy R. Wilson
State Bar No. 24037722
The Republic Center
325 North St. Paul Street, Suite 4150
Dallas, Texas 75201
Telephone: (214) 953-3900
Facsimile: (214) 953-3901

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document has been forwarded to the following counsel of record via facsimile on this the 5th day of September, 2008.


/s/ Jeremy R. Wilson_____
Jeremy R. Wilson

---

circumstances in which a prohibition on *41 class treatment may rise to the level of fundamental unfairness, [plaintiff's] generalizations do not satisfy her burden to demonstrate that the arbitration provision is invalid here") and stating that "[I]f there is a pattern in these cases it is this: a class action waiver will not be found unconscionable if the plaintiff had a meaningful opportunity to reject the contract term or if the agreement containing the waiver is not burdened by other features limiting the ability of the plaintiff to obtain a remedy for the particular claim being asserted in a cost-effective manner. If the agreement is so burdened, the "right to seek classwide redress is more than a mere procedural device.")).

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL**
**INDIVIDUAL ARBITRATION** Page 16