# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| CATHRYN ELAINE HARRIS, § | | |
| MARIO HERRERA, and MARYAM § | | |
| HOSSEINY on behalf of themselves and § | | |
| all others similarly situated, § | | |
| § | | |
| Plaintiffs, § | | |
| § | CIVIL ACTION NO. 2:08-cv-00155 | |
| v. § | | |
| § | | |
| BLOCKBUSTER INC. § | | |
| § | | |
| Defendant. § | | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS
## MOTION TO COMPEL INDIVIDUAL ARBITRATION

Defendant Blockbuster Inc. ("Blockbuster") files this Reply in Support of its Motion to Compel Individual Arbitration, and states as follows:

### I. INTRODUCTION

In their response, plaintiffs do not dispute that their claims fall under the scope of the arbitration agreement in this case. Instead, they attack the validity of the arbitration agreement and the Blockbuster Online contract. Their arguments do not succeed, and several of them are beyond the scope of this motion. First, plaintiffs cannot avoid the fact that they read and agreed to Blockbuster's Terms and Conditions (the "Terms and Conditions" or "Contract"), forming a valid "clickwrap" agreement pursuant to Texas case law. Second, the arbitration agreement contained in the Contract does not lack mutuality, as it clearly binds both plaintiffs and Blockbuster. Third, plaintiffs' unconscionability attack on the agreement's class-action waiver contradicts established Texas law.

Moreover, under the Federal Arbitration Act ("FAA"), defenses that are not based

1

specifically on the arbitration agreement are to be resolved by the arbitrator, not a court.[1] Even if the Court could reach such challenges, plaintiffs' arguments lack merit. For example, under the relevant case law, the change-in-terms provision does not render the Contract illusory. Because Blockbuster must post notice of any modifications on its website and because such modifications only have prospective effect, Blockbuster cannot avoid its present commitment to arbitrate. Similarly, the limitation of liability provision does not render the underlying contract illusory, and neither do any of the various other provisions plaintiffs cite. As a result, the Court should compel individual arbitration of this action.

## II. PLAINTIFFS READ AND ACCEPTED BLOCKBUSTER'S ARBITRATION TERMS.

Plaintiffs' first challenge to the existence of a valid arbitration agreement is their argument that "Blockbuster has not showed sufficient manifestation of assent." *See* Plaintiffs' Response to Defendant's Opposed Motion to Compel Arbitration and Brief in Support ("Resp.") at 9-10. This argument ignores the fact, however, that plaintiffs have already provided a clear manifestation of assent. During the Blockbuster Online sign-up process, plaintiffs were required to "click" on a box, affirmatively stating that they had read and accepted Blockbuster's Terms and Conditions, which were displayed next to the box by hyperlink.[2] If they did not click on the box, they were not allowed to complete the sign-up process. Despite having made this affirmative representation to Blockbuster that they *did* read and *did* agree to Blockbuster's terms, plaintiffs now contend that there is insufficient evidence of their acceptance of those terms. In

---

[1] 9 U.S.C. § 1 *et seq.* Plaintiffs cite the Texas General Arbitration Act, TEX. CIV. PRAC. & REM. CODE § 171.021, but it is the Federal Arbitration Act that applies here, both because this action is pending in federal court and because the parties explicitly chose the FAA to govern the agreement. *See* Dineen Decl. Ex. 2 at 4.

[2] *See* Dineen Decl. at ¶¶ 7-10; Ex. 1:

> I have read and agree to the blockbuster.com (including BLOCKBUSTER Online Rental) **Terms and Conditions** and certify that I am at least 13 years of age.

essence, plaintiffs suggest that they should be relieved of their duties under the Contract because their representation to Blockbuster that they read and agreed to its terms may have been false.

Unsurprisingly, plaintiffs offer no authority for such an argument. As they concede, "clickwrap" agreements like Blockbuster's are regularly enforced by Texas courts. *See Recursion Software, Inc. v. Interactive Intelligence, Inc.*, 425 F. Supp. 2d 756, 781-83 (N.D. Tex. 2006); *Barnett v. Network Solutions*, 38 S.W.3d 200, 204 (Tex. App.—Eastland 2001, pet. denied). Plaintiffs attempt to distinguish these cases on the grounds that Blockbuster's Terms and Conditions are displayed by hyperlink and that users are not actually forced to scroll through the terms. But the defining feature of a "clickwrap" agreement is that it requires an affirmative manifestation of assent (a "click"), not the way in which the user reviews the terms.[3] *See Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*, 106 F. Supp. 2d 895, 904-905 (N.D. Tex. 2000); *see also Southwest Airlines Co. v. Boardfirst, L.L.C.*, No: 3:06-CV-0891-B, 2007 WL 4823761, at *4 n.4 (N.D. Tex. Sept. 12, 2007). In fact, this Court has already rejected plaintiffs' distinction, holding that a "clickwrap" agreement was enforceable even though it did not require a user to scroll through it. *See RealPage, Inc. v. EPS, Inc.*, 560 F. Supp. 2d 539, 545 (E.D. Tex. 2007). Accordingly, plaintiffs' argument that there is insufficient evidence that they actually accepted Blockbuster's proposed terms should be rejected.

### III. THE ARBITRATION AGREEMENT DOES NOT LACK MUTUALITY.

Plaintiffs also argue that the arbitration agreement does not effectively bind Blockbuster and therefore "lacks mutuality of obligation." *See* Resp. at 5. But this argument is contradicted by the plain terms of the arbitration agreement, which applies to "***all*** claims, disputes or controversies" within the agreement's scope, regardless of whether they are brought by

---

[3] Plaintiffs do not (and cannot) dispute that Blockbuster's agreement is properly described as a "clickwrap" agreement. In the Joint Conference Report, plaintiffs themselves referred to the agreement as a "clickwrap" agreement. *See* Docket No. 14 at 3 ("The purported agreement is what is known as a "clickwrap" agreement….").

Blockbuster or its members. Dineen Decl. Ex. 2 at 4. "[M]utual promises to submit all . . . disputes to arbitration," such as this one, "constitute[] sufficient consideration, because both parties [are] bound to the promises to arbitrate." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 228 (Tex. 2003) (citing *In re Halliburton Co.*, 80 S.W.3d 566, 569 (Tex. 2002)).

Ignoring the arbitration agreement's plain language, which clearly binds both parties, plaintiffs focus solely on the class-waiver provision in the agreement, arguing that it applies only to them and not to Blockbuster. *See* Resp. at 5. But even if plaintiffs are correct that a class waiver is more likely to affect claims by members than claims by Blockbuster, that does not mean that the arbitration agreement is illusory. Texas courts have long rejected the notion that "every obligation of one party [must be] met by an equivalent counter obligation of the other." *See Howell v. Murray Mortgage Co.*, 890 S.W.2d 78, 86-87 (Tex. App.—Amarillo 1994, writ denied) ("Mutuality of obligation in each individual clause of a contract is unnecessary where there is consideration for the contract as a whole."). Here, there is ample consideration to support the arbitration agreement. For example, under the American Arbitration Association's ("AAA") Consumer Rules, Blockbuster foots nearly the entire bill for arbitration fees and costs for claims like these, paying all except $125. This promise—along with the mutual promises to arbitrate—is more than enough consideration to make the arbitration agreement binding.[4]

### IV. THE ARBITRATION AGREEMENT, INCLUDING THE CLASS ACTION WAIVER, IS NOT UNCONSCIONABLE.

Plaintiffs' unconscionability challenge to the arbitration agreement also ignores established Texas law. Unconscionability law in Texas includes both procedural and substantive elements. *See Halliburton*, 80 S.W.3d at 571. With regard to the procedural element, plaintiffs

---

[4] Even if the arbitration agreement were not mutual, it would still be enforceable under Texas case law. Where, as here, "an arbitration clause is part of an underlying contract, the rest of the parties' agreement provides the consideration." *In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 607 (Tex. 2005).

4

argue that the arbitration agreement is presented on a "take it or leave it" basis, but Texas courts have consistently held that this will not render a contract unconscionable. *Id.* at 572. Moreover, plaintiffs (two of whom are lawyers) cannot convincingly claim that the agreement was not sufficiently disclosed to them, particularly given that it appears in a single paragraph under the heading, "DISPUTE RESOLUTION." *See Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 172 (5th Cir. 2004) (noting that the FAA prohibits any requirement that arbitration clauses be displayed with special prominence).

Moreover, plaintiffs also cannot point to any substantive unconscionability in the agreement. As plaintiffs concede, Texas courts and other courts applying Texas law have repeatedly blessed "no class action" arbitration agreements, even where federal statutory claims have been asserted. *See Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004) (Fair Labor Standards Act); *Marsh v. First USA Bank, N.A.*, 103 F. Supp. 2d 909, 922-23 (N.D. Tex. 2000) (Truth in Lending Act); *see also* Motion at 9-11 (citing cases). Given this precedent, plaintiffs' suggestion that the Texas Supreme Court might reject such agreements is nothing more than wishful thinking.[5] In short, plaintiffs are unable to demonstrate unconscionability with respect to the arbitration agreement.

---

[5] Plaintiffs allude to a recent New Mexico Supreme Court case, *Fiser v. Dell Computer Corp.*, 188 P.3d 1215 (N.M. 2008), in an apparent effort to support their argument that the Texas Supreme Court would hold class action waivers to be substantively unconscionable. But while the *Fiser* court reversed the lower court on a choice-of-law issue, it agreed with the lower court on the point of law most relevant to this case: "Application of Texas law to the instant matter would likely require enforcing the class action ban." *Id.* at 1218. Moreover, plaintiffs' suggestion that there is an "emerging trend" against class action waivers greatly exaggerates the state of the law on this issue. As the Washington Supreme Court recently recognized, there is merely "a clear split of authority." *Scott v. Cingular Wireless*, 161 P.3d 1000, 1004 (Wash. 2007). As that court further recognized, Texas is on the side of enforcing such agreements. Indeed, in the one Blockbuster case cited by that court and by plaintiffs, the individual arbitration agreement was actually ***enforced*** as a matter of first impression in Oklahoma and Tenth Circuit law. *See Edwards v. Blockbuster Inc.*, 400 F. Supp. 2d 1305, 1309 (E.D. Okla. 2005).

In addition, plaintiffs' allegation that the arbitration clause is unconscionable because it waives statutory rights also fails. First, the class-waiver provision has been consistently upheld in Texas. Second, the remaining provisions accused of waiving such rights, such as the limitation of liability clause, are not part of the arbitration agreement and are for the arbitrator to consider. *See* Section V.A., *infra*. Indeed, all of Plaintiffs' unconscionability attacks on provisions outside the arbitration agreement are improper, as such issues are for the arbitrator to resolve. *Id*.

5

## V. PLAINTIFFS CANNOT SUCCESSFULLY OPPOSE BLOCKBUSTER'S MOTION BY RELYING ON PROVISIONS OUTSIDE THE ARBITRATION AGREEMENT.

### A. Challenges to the Contract as a Whole Must Go to the Arbitrator.

Plaintiffs' attempts to avoid arbitration based on provisions outside the arbitration agreement, such as the change-in-terms provision or limitation of liability provision, also fail. Courts have held that "challenge[s] to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006); *In re Merrill Lynch Trust Co.*, 235 S.W.3d 185, 190 (Tex. 2007) (holding that challenges to arbitration agreement based on general change-in-terms and termination provisions were for the arbitrator); *see also Iberia Credit Bureau,* 379 F.3d at 172 n.16 (noting that "the [general] change-in-terms clause potentially implicates the so-called separability doctrine, which requires certain challenges to contracts containing arbitration clauses to be heard by the arbitrator rather than by the court"). Unlike the *Davidson* case relied on by plaintiffs, the change-in-terms provision in Blockbuster's Terms and Conditions is part of the broader Contract, not the arbitration provision, and is therefore beyond the scope of this motion. *Cf. Sosa v. PARCO Oilfield Servs., Ltd.*, No. 2:05-cv-153, 2006 WL 2821882, at *4 (S.D. Tex. Sept. 26, 2006) (distinguishing *Davidson* on same grounds). Similarly, to the extent that plaintiffs wish to challenge the limitation-of-liability provision—which is also not part of the arbitration agreement—they must do so in the arbitral forum.[6]

### B. The Change-In-Terms Provision Does Not Render the Arbitration Provision Illusory.

Even if the Court could resolve challenges to other provisions in the underlying contract,

---

[6] Contrary to plaintiffs' suggestion, neither *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672 (Tex. 2006), nor *In re AdvancePCS Health L.P.*, 172 S.W.3d 603 (Tex. 2005), held that a court faced with an arbitration agreement must determine whether the underlying contract has sufficient mutuality of obligation. Both courts properly confined their analyses to the arbitration provisions. *See Palm Harbor Homes*, 195 S.W.3d at 677; *AdvancePCS Health*, 172 S.W.3d at 607.

Plaintiffs' argument that the general change-in-terms provision renders the arbitration agreement illusory fails. Both the Texas Supreme Court and the Fifth Circuit have made clear that an arbitration agreement is not illusory where, as here, the change-in-terms provision requires the company to provide notice of any modification to that agreement. *See Halliburton*, 128 S.W.3d at 569-70; *Iberia Credit Bureau*, 379 F.3d at 173-74; *Martinez v. TX. C.C., Inc.*, No. H-05-3747, 2006 WL 18374, at *3 (S.D. Tex. Jan. 4, 2006); *D.R. Horton, Inc. v. Brooks*, 207 S.W.3d 862, 870 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("Because any changes or amendments [to the arbitration clause] must be communicated through notice, the promise to arbitrate is not illusory."). In this case, the Contract is clear that such modifications become effective only ***after*** being posted on the website.

Plaintiffs try to avoid this authority by mischaracterizing Blockbuster's Contract – incorrectly suggesting that the Contract allows Blockbuster to change the agreement without posting notice, essentially allowing Blockbuster to unilaterally (and retroactively) decide that it will not be bound by the Contract's terms. *See* Resp. at 4-5. This is a fundamental misreading of the general change-in-terms provision. In fact, Blockbuster clearly commits itself to provide notice of any changes to the Contract's terms. Specifically, it states: "Modifications will be effective immediately ***upon posting***."[7] Consistent with existing case law, the change-in-terms provision simply makes clear that there is no set term for the parties' agreement. At any time, with or without notice, Blockbuster may propose changes to the Contract. Members can accept or reject any modifications to the Terms and Conditions by continuing or discontinuing their use of the website.[8] The contract is clear that such modifications become effective only ***after*** being posted on the website.

---

[7] Dineen Decl. Ex. 2 at 1 (emphasis added).
[8] *Id.*

7

This kind of provision has been upheld by many courts – which recognize that different agreements require different methods of notice. *See, e.g.*, *Iberia Credit Bureau*, 379 F.3d at 173-74 (change-in-terms provision did not render contract illusory where change in terms "c[ould] be understood as an invitation to enter into a relationship governed by the new terms," which the customer could accept "by continuing to use the service"); *Armstrong v. Assocs. Int'l Holdings Corp.*, 242 Fed. Appx. 955, 958 (5th Cir. 2007); *Martinez,* 2006 WL 18374 at *3 (change-in-terms provision did not render contract illusory where arbitration policy was made "available" to the employees by keeping a copy in the office[9]); *AdvancePCS*, 172 S.W.3d at 607; *Halliburton*, 80 S.W.3d at 569-70; *In re Champion Techs., Inc.*, 222 S.W.3d 127, 131 (Tex. App.—Eastland 2006, no pet.); *D.R. Horton, Inc.*, 207 S.W.3d at 869.

Based on this provision, plaintiffs cannot suggest that the Contract allows Blockbuster to effectuate changes without ***any*** notice to the members. Rather, at most, plaintiffs can quibble about the prescribed ***form*** of the notice. But challenges to the form and adequacy of notice do not result in the nullification of the entire contract. Rather, to the extent plaintiffs do not believe that Blockbuster's notice procedure provides sufficient notice of changes, they may challenge any such changes if and when they are made (or when Blockbuster seeks to enforce them). At this point, where plaintiffs are not complaining about any specific changes, it is premature to suggest that the form of prescribed notice invalidates the entire Contract.[10]

Finally, a change-in-terms provision will not render an arbitration provision illusory where, as here, any changes to the arbitration provision "would only have a prospective effect."

---

[9] The contract at issue in *Martinez* required employees to "familiarize themselves with the specific terms and conditions of the arbitration policy," which "include[d] amendments that might be made from time to time." 2006 WL 18374 at *3. Similarly, in this case, plaintiffs agreed to "review the[] Terms and Conditions periodically" when they signed up for Blockbuster Online. Dineen Decl. Ex. 2 at 1.

[10] In fact, the arbitration agreement has not been modified since plaintiffs became Blockbuster Online members. *See* Dineen Decl. ¶ 12.

*Champion Techs.*, 222 S.W.3d at 132; *see Halliburton*, 128 S.W.3d at 569-70. The arbitration agreement explicitly provides that it applies to "[a]ll claims, disputes or controversies . . . whether pre-existing, present or future."[11] The arbitration agreement requires both parties to the Contract to arbitrate any disputes that arise while the arbitration agreement is in effect, even if the Contract is subsequently terminated or amended. Obviously Blockbuster "cannot avoid its promise to arbitrate by amending the provision or terminating it altogether" – therefore, the arbitration agreement is not illusory. *Halliburton*, 128 S.W.3d at 570.[12]

### C. The Other Provisions Challenged By Plaintiffs Do Not Render the Contract Illusory.

Plaintiffs' remaining arguments that the underlying contract is illusory also fail. Even if the Court could consider plaintiffs' challenge to the limitation of liability provision, that provision does not, as plaintiffs argue, render the entire agreement a nullity. In *Sterling Computer Systems of Texas, Inc. v. Texas Pipe Bending Co.*, 507 S.W.2d 282 (Tex. Civ. App.– Houston [14th Dist.] 1974, writ ref'd), the only case relied on by plaintiffs for this proposition, the contract at issue contained a provision which stated that the defendant "shall not be liable for its failure to profide [sic] the services herein . . . ," and therefore, the court found that the defendant "would not be liable for an outright refusal" to provide the services contracted for. *Id.* at 282. Unlike the provision in *Sterling Computer*, the limitation of liability section at issue here

---

[11] Dineen Decl. Ex. 2 at 4.

[12] Moreover, a change-in-terms provision, such as the one at issue here, does not render a contract illusory and unenforceable where "there has been even a part performance by the party seeking to enforce the [agreement], and in such part performance such party has rendered services or incurred expense contemplated by the parties at the time such contract was made." *Cherokee Commc'ns, Inc. v. Skinny's, Inc.*, 893 S.W.2d 313, 316 (Tex. App.— Eastland 1995, writ denied) (holding that the defendant's power to terminate the agreement did not make the agreement unenforceable where it had performed under the agreement) (quoting *Hutchings v. Slemons*, 174 S.W.2d 487, 489 (Tex. 1943)); *see also AdvancePCS*, 172 S.W.3d at 607 ("Having used PCS's services and network to obtain reimbursements for 10 years, [plaintiffs] cannot claim their agreement to arbitrate was without consideration"). In this case, Blockbuster has provided at least "part performance" under the parties' agreement, conferring a benefit on plaintiffs in the form movie rentals and other services associated with the Blockbuster Online program. As in *Cherokee Communications*, this "benefit" constitutes sufficient consideration to render the entire agreement, including the arbitration provision, valid and enforceable, even if, as plaintiffs claim, Blockbuster has the power to amend or terminate the agreement at any time.

does not exclude Blockbuster from all liability, but merely limits remedies, including certain kinds of damages.[13] Limitation of liability clauses that merely limit remedies – as well as disclaimers of warranties (which plaintiffs also challenge) – do not render the underlying contract unenforceable.[14]

Similarly, plaintiffs' attack on the termination provision also fails. A termination provision will not render an arbitration agreement illusory where, as here, the obligation to arbitrate is not extinguished upon termination of the underlying contract. *See In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 782 (Tex. 2006) (arbitration agreement is not illusory where the promises to arbitrate do not depend on continued employment); *In re Mission Hosp., Inc.*, No. 13-07-543-CV, 2007 WL 3026604, at *4 (Tex. App.—Corpus Christi Oct. 18, 2007, no pet.) (same). Because the arbitration agreement obligates the parties to arbitrate any disputes that arise while the arbitration agreement is in effect, regardless of whether the Contract is later terminated, *see* section V.B., *supra*, the agreement is not illusory.[15]

## VI. CONCLUSION

Based on the foregoing, Blockbuster respectfully requests that the Court grant its motion to compel individual arbitration, pursuant to the AAA's Consumer Rules.

---

[13] For example, the provision does not prohibit plaintiffs from seeking injunctive relief. *See* Dineen Decl. Ex. 2 at 4.

[14] *See Orion Refining Corp. v. UOP*, No. 01-05-00681-CV, 2007 WL 2874702, at *7 (Tex. App.—Houston [1st Dist.] Oct. 4, 2007, pet. denied); *Universal Computer Consulting Holding, Inc. v. Hillcrest Ford Lincoln-Mercury, Inc.*, Nos. 14-04-00819-CV, 14-04-01103-CV, 2005 WL 2149508, at *5 (Tex. App.—Houston [14th Dist.] Sept. 8, 2005, no pet.); *Gililland v. Taylor Investments*, No. 11-03-00175-CV, 2004 WL 2126755, at *4 (Tex. App.—Eastland Sept. 23, 2004, pet. denied).

[15] Finally, even if, as plaintiffs argue, the limitation of liability or other provisions render the underlying contract a "nullity," the arbitration agreement is enforceable even as a stand-alone agreement, as the parties' mutual promises to submit disputes to arbitration provide the necessary consideration. *See* section IV, *supra*.

Respectfully submitted,

/s/ Frank C. Brame
Michael L. Raiff
  State Bar No. 00784803
Frank C. Brame
  State Bar No. 24031874
VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
214.220.7705
214.999.7705 (fax)
mraiff@velaw.com

*ATTORNEYS FOR DEFENDANT BLOCKBUSTER INC.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendant's Reply in Support of Its Motion to Compel Individual Arbitration was served by ECF on the 19th day of September, 2008 on counsel of record for Plaintiffs.

/s/ Frank C. Brame
Frank C. Brame

Dallas 1456150v.1