IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CATHRYN ELAINE HARRIS, MARIO HERRERA, and MARYAM HOSSEINY on behalf of themselves and all others similarly situated, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 2:08-cv-00155 |
| BLOCKBUSTER INC. | § § § | |
| Defendant. | § § | |

**DEFENDANT BLOCKBUSTER'S AMENDED MOTION TO TRANSFER VENUE**

Pursuant to 28 U.S.C. § 1404(a), and subject to and without waiving its right to compel individual arbitration pursuant to a mandatory arbitration agreement between the parties,[1] Defendant Blockbuster Inc. ("Blockbuster" or "Defendant") files this Amended Motion to Transfer Venue to the United States District Court for the Northern District of Texas. Blockbuster filed its original Motion to Transfer Venue on June 17, 2008. That motion had already been fully briefed when, on October 10, 2008, the Fifth Circuit issued its *en banc* opinion in *In re Volkswagen*, 535 F.3d 304 (5th Cir. 2008) ("*Volkswagen II*"). To give the parties an opportunity to brief this new precedent, the Court denied Blockbuster's original motion without prejudice and invited it to file this Amended Motion. [ECF Doc. #26.]

---

[1] Plaintiffs' claims are covered by an individual arbitration agreement between Blockbuster and Plaintiffs. In that agreement, all parties to this action agreed that disputes like this one would be resolved by individual arbitration pursuant to the Federal Arbitration Act. Blockbuster has filed a motion to compel individual arbitration. [ECF Doc. #15.]

1

# I.    SUMMARY OF ARGUMENT

In its *en banc* opinion in *Volkswagen II*, the Fifth Circuit firmly rejected the arguments on which Plaintiffs had based their opposition to Blockbuster's original motion to transfer. With regard to the venue transfer analysis, this case is virtually indistinguishable from *Volkswagen II*. Here, as in *Volkswagen II*, Dallas plaintiffs are suing a Dallas defendant[2] based on events that occurred in Dallas. *See Volkswagen II*, 45 F.3d at 307. As in *Volkswagen II*, all of the in-state witnesses likely to be called in this case are in Dallas, as is the relevant documentary evidence. *Id.* at 307-08. In short, as in *Volkswagen II*, the only connection between this case and the Marshall Division of the Eastern District of Texas is Plaintiffs' choice to file suit there.

The question of how much deference should be accorded Plaintiffs' venue choice dominated the briefing on Blockbuster's original motion. Whereas Plaintiffs argued that their choice was the "primary factor" for the Court to consider, Blockbuster argued that it should yield to overriding considerations of convenience. On this point, the *Volkswagen II* court agreed with Blockbuster's position: *When the movant demonstrates that the transferee venue is clearly more convenient, the district court should grant the transfer. Id.* at 315.

The *Volkswagen II* court also rejected several of the same arguments that Plaintiffs had relied on in applying the private and public interest factors adopted by the Fifth Circuit for deciding motions under 28 U.S.C. § 1404(a). For example, the court rejected the argument that the first private interest factor—the relative ease of access to sources of proof—has been rendered moot by technological advances in information storage and accessibility. *Compare id.* at 316 *with* Response at 7-8 [ECF Doc. #11]. As to the second private factor—the availability of

---

[2]    In *Volkswagen II*, although the third-party defendant was a Dallas resident, the movant (Volkswagen) was a foreign corporation. *See id.* at 315-16. Accordingly, this case presents an even stronger basis for transfer to the North District of Texas, given Blockbuster's Dallas-based headquarters.

compulsory process to secure the attendance of witnesses—the *Volkswagen II* court confirmed that the overarching concern in the venue transfer analysis remains with convenience. *See Volkswagen II*, 545 F.3d at 316 (noting that the court's ability to secure attendance of witnesses fails to address issue of convenience). And as to the third private factor—the cost of attendance for willing witnesses—the court rejected the argument (also advanced by Plaintiffs here) that the burden of additional travel from Dallas to Marshall is minimal and should therefore be disregarded. *Compare id.* at 317 *with* Response at 10. Regarding the main public interest factor—the local interest in having localized disputes decided at home—the *Volkswagen II* court once again rejected the argument on which Plaintiffs had been relying, holding instead that the mere availability of a product or service in the Eastern District does not connect the dispute to this District in any relevant way. *Compare Volkswagen II*, 545 F.3d at 317-18 *with* Response at 12-13.

Their arguments having been rejected in *Volkswagen II*, Plaintiffs now have no basis to oppose Blockbuster's request to transfer this case to the Dallas Division of the Northern District of Texas, where all the parties, evidence, and counsel are already present.

## II. BACKGROUND

### A. Nature of This Action

Plaintiffs' claims in this case arise from their use of Blockbuster's website and their participation in Blockbuster Online, an internet subscription service through which customers can rent and purchase DVDs. In addition to Blockbuster Online, plaintiffs allege that they are users of Facebook, a social networking website that allows users to communicate with friends, upload photographs, join networks, and operate a variety of user applications. With their accounts, Facebook users have control over how they share their own information and who can see it. Plaintiffs allege that Blockbuster violated the Video Privacy Protection Act ("VPPA"), 18

3

U.S.C. § 2710, by disclosing their "personally identifiable information" to their Facebook account and to others. First Amended Complaint ("Compl.") ¶¶ 2-4.[3]

## B. The Location of the Parties and the Place of the Alleged Wrong

This case has no connection to the Eastern District of Texas, including the Marshall Division of the Eastern District of Texas. *See* Declaration of Ryan Miller[4] ("Miller Dec.") ¶¶ 6-7. All of the parties are located in Dallas, and the conduct alleged in the Complaint took place within the Dallas Division of the Northern District of Texas.

Each Plaintiff alleges that he or she resides in Dallas County, within the Dallas Division of the Northern District of Texas. Compl. ¶¶ 2-4. Defendant Blockbuster also resides in Dallas County, with its nationwide headquarters and corporate offices located at 1201 Elm Street, Dallas, Texas 75270 – within the Dallas Division of the Northern District of Texas. Miller Dec. ¶ 4. In fact, Blockbuster's headquarters are approximately three blocks from the federal courthouse in Dallas. *Id.* Hundreds of Blockbuster employees work at its headquarters, including corporate management, Blockbuster Online staff, Blockbuster's in-house counsel, and all of the Blockbuster employees who are likely witnesses in this case. *Id.*

Blockbuster Online, a division of Blockbuster, is also located at 1201 Elm Street, Dallas, Texas 75270.[5] *Id.* ¶ 5. All of Blockbuster Online's computers, data, and documents are located at 1201 Elm Street, Dallas, Texas. *Id.* Because the Complaint involves the alleged disclosure of

---

[3] Plaintiffs' claims lack merit. Nothing in the VPPA prohibits Blockbuster from communicating with its Online members through Facebook, and Blockbuster is not liable for its members' decisions to further share information with their Facebook friends. On this motion, however, the merits of Plaintiffs' claims are not at issue.

[4] The Miller Declaration is attached to this Amended Motion as Exhibit A.

[5] Blockbuster has a customer service call center in McKinney, Texas, located within the Eastern District of Texas, which does include customer service calls related to Blockbuster Online. None of the allegations in the Complaint even remotely relate to any conduct that could be claimed as taking place at Blockbuster's call center in McKinney.

Plaintiffs' information by Blockbuster Online, all of the conduct alleged of Blockbuster in the Complaint – if it occurred at all – could only have occurred in Dallas, Texas.[6] *Id.*

Facebook, Inc. is located on University Avenue in Palo Alto, California. *See* Declaration of Frank Brame[7] ("Brame Dec.") ¶ 7. Facebook is not alleged to have engaged in any relevant conduct that could have occurred in the Eastern District of Texas.

## C. Location of the Witnesses and Documents

None of the relevant evidence in this case, including the witnesses and documents, is located in the Marshall Division of the Eastern District of Texas. Instead, the parties and much of the evidence is located in the Dallas Division of the Northern District of Texas.

Blockbuster has at least four witnesses from Dallas that it would call in a trial of this matter: Ryan Miller, Chris Zarski, Drexel Owusu, and Phillip K. Morrow.[8] Brame Dec. ¶ 6. Each of these witnesses is employed at Blockbuster's headquarters—three blocks from the federal courthouse in Dallas, yet approximately 150 miles from the federal courthouse in

---

[6] Plaintiffs have alleged that Blockbuster's principal place of business is at P.O. Box 8019, McKinney, Texas 75070 in Collin County. Compl. ¶ 3. This allegation is wrong. Miller Dec. ¶ 3. Blockbuster's principal office is at 1201 Elm Street, Dallas, Texas, not McKinney, Texas. *Id.* ¶¶ 3-4. Blockbuster's facility in McKinney, Texas is the McKinney Distribution Center. *Id.* ¶ 6. The McKinney Distribution Center is a distribution center for Blockbuster stores. *Id.* There is also a customer service call center at that location. *Id.* Based on the allegations in the Complaint, the McKinney Distribution Center has no connection whatsoever to this case. *Id.* None of the conduct alleged of Blockbuster – even if true – could have occurred in McKinney, Texas. *Id.*

[7] The Brame Declaration is attached to this Amended Motion as Exhibit B.

[8] Ryan Miller's job title is Director of Product Management Online. He is likely to testify regarding Blockbuster Online operations. Chris Zarski's job title is Director of Customer Acquisition. He is likely to testify regarding Blockbuster Online's marketing. Drexel Owusu's job title is Director of Strategic Planning. He is likely to testify regarding Facebook. Phillip K. Morrow's job title is Senior Vice President and Chief Information Officer. He is likely to testify regarding Blockbuster Online operations and management. *See* Brame Dec. ¶ 6.

Marshall, Texas.[9] *See* Miller Dec. ¶¶ 9-12. Any other fact witnesses Blockbuster is likely to call in this case will also be located in Dallas, Texas. *See* Brame Dec. ¶ 6.

In addition, any Blockbuster documents that would relate to the allegations in this case, such as Blockbuster Online's documents, are located at its downtown Dallas headquarters. *See* Miller Dec. ¶ 5. This is also true for any other physical evidence that may be relevant, such as data, servers, or any other Blockbuster evidence. *Id.*

Plaintiff Cathryn Harris also resides in Dallas County, approximately 150 miles from Marshall, Texas. Compl. ¶ 2. Her documents, computer, and other evidence are likely to be located where she resides – in Dallas County, Texas. *Id.* The same is also true for Plaintiffs Mario Herrera and Maryam Hosseiny, both of whom also reside in Dallas County, Texas. *Id.* at ¶¶ 3-4.

Blockbuster likely will call at least two Facebook witnesses to testify in this matter. Brame Dec. ¶ 7. Given Facebook's Palo Alto location, each Facebook witness would likely need to travel to Texas for hearings and trial. *Id.* American Airlines operates several non-stop flights per day to Dallas, Texas from San Jose International Airport, the nearest major airport to Palo Alto. *Id.* There are no flights between San Jose International and Marshall, Texas. *Id.*

Lead counsel for the parties are located in Dallas. The offices of Vinson & Elkins, lead counsel for Blockbuster, are at 2001 Ross Avenue in Dallas, approximately eight or nine blocks from the federal courthouse in Dallas. Brame Dec. ¶ 4. The Corea Firm's offices, lead counsel for Harris, are located a similar distance from the federal courthouse in Dallas. *Id.*

In short, this case could be tried much more conveniently in Dallas than in Marshall. *Id.* ¶ 8. The documents and witnesses are located at Blockbuster's headquarters in downtown

---

[9] To the extent hearings are held in Texarkana, Texas, the courthouse there is approximately 180 miles from Blockbuster's headquarters in Dallas.

Dallas. *Id.* A trial in Marshall would be more than 150 miles away and would require additional, substantial expense for travel, hotel, and time away from work, family, and community for witnesses who live and work in Dallas. *Id.* Meanwhile, in Dallas, witnesses could return to work on a same-day basis and would not need to travel or stay overnight. *Id.* For these reasons, it would be much more convenient for these parties, witnesses, and counsel to try this case in Dallas. *Id.*

### III. ARGUMENT AND AUTHORITIES

In their briefing on Blockbuster's original motion, the parties agreed on the relevant legal standard under § 1404(a).[10] As Plaintiffs do not dispute that this case could have been filed in the Dallas Division of the Northern District of Texas,[11] the analysis therefore focuses on the private and public interest factors adopted by the Fifth Circuit in *In re Volkswagen AG*, 317 F.3d 201, 203 (5th Cir. 2004) (per curiam). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern

---

[10] Section 1404(a) states:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

[11] Venue is proper there under 28 U.S.C. § 1391. First, Blockbuster resides in the Northern District of Texas. *See* Miller Dec. ¶ 4; 28 U.S.C. § 1391(b)(1). Second, a substantial part of the alleged events or omissions giving rise to the claim occurred in the Northern District of Texas, (*see* 28 U.S.C. § 1391(b)(2)) – Blockbuster Online is located at Blockbuster's headquarters in Dallas, Texas; its employees work there; and any conduct it engaged in allegedly in violation of the VPPA must have taken place in Dallas, Texas. *See* Miller Dec. ¶ 5.

7

the case, and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* In evaluating transfer under §1404(a), the Court considers these private and public factors, but none of them are given dispositive weight. *Id.*

As noted above, Plaintiffs originally argued that, in conducting this analysis, the plaintiff's choice of forum is the foremost consideration. *See* Response at 5. The Fifth Circuit rejected that argument in *Volkswagen II*, making clear that a moving party need only show "good cause" under § 1404(a), a showing that is satisfied if the transferee court is "clearly more convenient" than the plaintiff's chosen venue.[12] *Volkswagen II*, 545 F.3d at 315 (quotation omitted). Based on the application of the private and pubic interest factors, there is no doubt that it is "clearly more convenient" to litigate this Dallas-based dispute between Dallas-based parties in Dallas.

A. **The Private Interest Factors Support Transfer.**

  1. **The Relative Ease of Access to Sources of Proof**

The first private factor to be considered is the relative ease of access to sources of proof. *Volkswagen I*, 371 F.3d at 203. In this case, nearly all of the relevant evidence is located in the Northern District of Texas, and there is no evidence located in the Eastern District of Texas. The named plaintiffs all reside in Dallas County; to the extent that their computers, documents, and testimony are relevant in this case, those sources of proof are located in the Northern District of Texas. *Id.* Blockbuster and Blockbuster Online are also located in Dallas, along with all of the Blockbuster documents, data, computers, and other information that could be relevant in this

---

[12] The *Volkswagen II* court also rejected the argument—advanced by Plaintiffs in response to Blockbuster's original motion—that the plaintiff's choice of venue is an independent factor to be considered. *See Volkswagen II*, 545 F.3d at 314 n.10 ("A plaintiff' choice of forum, however, is not an independent factor within the *forum non conveniens* or the § 1404(a) analysis.").

8

case. Miller Dec. ¶¶ 4-5. Furthermore, all of the Blockbuster employees who could potentially testify in this matter are employed in Dallas, Texas.[13] *Id.*

Similarly, Facebook would also likely find it more convenient to proceed in Dallas because its witnesses would need to travel from Palo Alto, California to Texas for hearing and trial. Brame Dec. ¶ 7. As noted above, Facebook witnesses can fly directly to Dallas from San Jose International Airport, while there are no direct flights between San Jose International and Marshall, Texas. *Id.* As a result, any Facebook witness would have to travel the additional distance from DFW airport (or another airport) to Marshall for trial, incurring additional airfare, hotel, and car expense.

Of course, Plaintiffs did not dispute that Dallas would be a convenient venue for this case, or even that Dallas would be at least somewhat more convenient than Marshall. Nevertheless, Plaintiffs argued in their original Response that technological advancements in information storage and accessibility have rendered this factor less important. *See* Response at 7-8. But the *Volkswagen II* court rejected this argument, holding that the fact that access to sources of proof may present a lesser inconvenience given today's technology "does ***not*** render this factor superfluous." 545 F.3d at 316 (emphasis added). The *Volkswagen II* court made clear that even considering recent technological advancements, "the sources of proof requirement is a meaningful factor in the analysis." *Id.* Accordingly, this first factor weighs in favor of transfer.

### 2. The Availability of Compulsory Process to Secure the Attendance of Witnesses

The second private factor also favors a transfer. Although Facebook's California witnesses would be outside the subpoena power of both the proposed and existing venues, the

---

[13] Blockbuster has at least four witnesses from Dallas that it would call in a trial of this matter: Ryan Miller, Chris Zarski, Drexel Owusu, and Phillip K. Morrow. Brame Dec. ¶ 6. Each of these witnesses is employed at 1201 Elm Street, Dallas, Texas. Miller Dec. ¶¶ 9-12.

Northern District of Texas enjoys superior subpoena power to the Eastern District over every other potential witness that might be called. For example, to the extent that witnesses like Ryan Miller, Chris Zarski, Drexel Owusu, or Phillip K. Morrow need to be compelled to attend, such witnesses are employed in Dallas more than 100 miles from Marshall, Texas. Miller Dec. ¶¶ 9-12. In Marshall, a subpoena would either be outside the power of the court or subject to a motion to quash. FED. R. CIV. P. 45(c)(3)(A)(ii), (B)(iii). In *Volkswagen II*, the Fifth Circuit relied on similar facts in deciding that this private factor weighed in favor of transfer. *Volkswagen II*, 545 F.3d at 316. Moreover, the *Volkswagen II* court reiterated that the focus in this analysis must always remain on the issue of convenience, even where compulsory process is available. *Id.* ("[the fact] that a district court can deny any motions to quash does not address concerns regarding the convenience of parties and witnesses").

### 3. The Cost of Attendance for Willing Witnesses

Again, this factor weighs heavily in favor of transfer.[14] As noted above, ***all*** of the "willing" witnesses, including Plaintiff Harris, Plaintiff Herrera, Plaintiff Hosseiny, Blockbuster's corporate representative, Blockbuster's officers, and any other in-state witnesses are already in Dallas, just blocks away from the Dallas courthouse. All of their documentary evidence is here, too. Facebook's witnesses in the California Bay Area are a nonstop flight away from Dallas. By contrast, Marshall is 155 miles away from the Dallas witnesses and evidence. Accordingly, trial in Marshall would clearly be less convenient, imposing additional travel time,

---

[14] Plaintiffs suggested in their original Response that the Court should not consider the cost to party witnesses in weighing this factor. The Fifth Circuit made clear, however, that the appropriate consideration under this factor is the cost of attendance for ***all*** "willing" witnesses, including party witnesses. *See Volkswagen II*, 545 F.3d at 316 (considering the cost of attendance for a list of potential witnesses that included, among others, the third-party defendant).

costs, and logistical demands on all parties and witnesses.[15]

Although Plaintiffs attempted to argue in their original Response that "the fact that [witnesses] would have to travel a bit further to Marshall than to Dallas hardly warrants transfer of this litigation," Response at 10, the *Volkswagen II* court, confronting identical facts, held that this factor weighed in favor of transfer. *See Volkswagen II*, 545 F.3d at 317. The court found that, despite the 150-mile proximity between Dallas and Marshall, the witnesses would suffer monetary costs as well as personal costs associated with being away from their work, family, and community. *Id.*

In light of this recent guidance from the Fifth Circuit, this private interest factor clearly weighs substantially in favor of transfer.

### 4. All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive

As shown above, proceeding in the Northern District of Texas would be easier, more expeditious, and less expensive—in short, clearly more convenient. Furthermore, because this case is in the early stages, a transfer would not cause any delay or prejudice. *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 666 (E.D. Tex. 2007). Accordingly, this factor—as well as the other private interest factors—strongly supports transfer.

---

[15] As the *Volkswagen I* court explained:

> Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel with overnight stays increases the time which these fact witnesses must be away from their regular employment. Furthermore, the task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated . . . .

*Id.* at 205.

## B. The Public Interest Factors Support Transfer.

### 1. The Local Interest in Having Localized Interests Decided at Home

Despite the fact that this case involves parties located in Dallas and conduct that allegedly occurred in Dallas, Plaintiffs argued on the original motion that the Eastern District of Texas has an interest in this action because "numerous individuals who reside in the Eastern District of Texas also use Blockbuster services." Response at 12. Once, again, this argument was flatly rejected by the *Volkswagen II* court. In *Volkswagen II*, the court held that the assertion that the citizens of Marshall have an interest in a case simply because a product or service is available in Marshall "stretches logic in a manner that eviscerates the public interest that this factor attempts to capture." *Volkswagen II*, 545 F.3d at 318. As the Fifth Circuit recognized, such an argument would apply with equal force to virtually *any* judicial district in the United States, "leav[ing] no room for consideration of those actually affected—directly or indirectly—by the controversies and events giving rise to a case." *Id.*

Here, as in *Volkswagen II*, "the residents of the Dallas Division have extensive connections with the events that gave rise to this suit." *Id.* The named parties are located in Dallas, the witnesses and evidence are located in Dallas, and the events giving rise to this action occurred in Dallas, and therefore, the Northern District of Texas has the greater local interest in deciding this case. *Id.* As such, there is no specific local interest in this case for the Eastern District.[16]

The fact that this case involves class claims does not change this analysis. Indeed, *Volkswagen II*'s holding on this factor has already been applied to a putative class action case.

---

[16] The Fifth Circuit has recognized that "jury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)) (finding that location of the parties and witnesses in San Antonio area "weighs heavily" in favor of transfer from Marshall Division); *QR Spex, Inc.*, 507 F. Supp. 2d at 667.

*See Kleiner v. Southwest Airlines Co.*, No. 5:08-CV-00218, 2008 WL 4890590 (W.D. Tex. Nov. 4, 2008). In that case, the court recognized that some putative class members resided in the transferor district, but still held that the transferee district had a greater interest in the case given the defendant's location there and the occurrence of certain underlying events in that district. *Id.* at *5. This analysis finds ample support in case law. *See, e.g., United States ex rel. Lois Sero v. Preiser*, 506 F.2d 1115, 1129-1130 (2d Cir. 1974); *Morath v. Metro. Recovery Svcs., Inc.*, 2008 WL 954154, at *1 (S.D.N.Y. April 8, 2008) ("For class actions, the venue determination is made by reference to the named parties and their claims only."); *Joseph v. Liberty Nat'l Life Ins. Co.*, 2008 WL 2026006, at *1 (S.D. Fla. May 9, 2008) ("[I]n considering venue, the inquiry must be focused only on the named Plaintiffs and not the potential class members."); *Smith v. Burlington N. Santa Fe Ry. Co.*, 2006 WL 3192545, at *2 (D. Kan. November 1, 2006) ("None of the named plaintiffs [traveled to Kansas]. Plaintiff's allegation that many of the potential members of the putative class performed trips in Kansas does not change that fact or make venue appropriate here.") 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1757 (noting that for venue "only the residence of the named parties is relevant"); JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 110.07.[17]

Accordingly, this public factor supports transfer.

### 2. The Administrative Difficulties Flowing from Court Congestion

In considering a motion to transfer venue under Section 1404(a), the Court should also consider whether court congestion weighs in favor of transfer. *Volkswagen I*, 371 F.3d at 203.

---

[17] Moreover, the Plaintiffs are contractually prohibited from maintaining this case as a class action by virtue of the individual arbitration agreement and class waiver agreement applicable to users of Blockbuster Online.

13

Here, this factor weighs in favor of transfer because of the busy dockets of the Eastern District of Texas.

The Federal Court Management Statistics for the Northern and Eastern District show that the Eastern District has a relatively higher caseload than the Northern District. Due to the high number of complex matters being handled in the Eastern District, the weighted filings for 2007 show a substantially greater caseload per judge for courts in the Eastern District (674) versus the Northern District (470). Brame Dec. ¶ 9. On an unweighted basis, as the 2007 statistics show, the Northern District has a lower caseload per judge (324) than the Eastern District (419) and faster median disposition rate (6.8 / 9.0 mos.), and a similar median time to trial (19.4 / 18.0 mos.). *Id.* Therefore, based on the available data, it would be just as efficient, if not more so, to handle this case in the Dallas Division of the Northern District of Texas. *Id.* The Northern District of Texas has no backlog or congestion of cases that would make transfer inappropriate. *Id.* Although, as a practical matter, this case is subject to mandatory arbitration pursuant to an agreement for individual arbitration, it is nonetheless true that this case could proceed quickly and efficiently in the Northern District of Texas. *Id.* As a result, this factor weighs in favor of transfer.

Finally, transfer is particularly appropriate under this factor because class action cases are complex matters. This case may impose a substantial burden on the time and resources of the Court that ultimately hears this case. It would be inappropriate and unfair to impose the burden and expense of this case on a forum, such as this one, that has little or no connection to this case. *Volkswagen I*, 371 F.3d at 206.[18]

---

[18] Because Blockbuster seeks an intrastate transfer, the last two public factors, which look to the court's familiarity with the governing law and potential conflicts relating to application of foreign law, do not weigh in favor or against a transfer.

## IV. CONCLUSION AND PRAYER

In sum, this case is a quintessential Dallas dispute, with Dallas parties litigating claims that arose in Dallas. As in *Volkswagen II*, "[t]he only connection between this case and the Eastern District of Texas is plaintiffs' choice to file there." *Volkswagen II*, 545 F.3d 318 (citation omitted). To the extent that there was ever any question as to whether a plaintiff's venue choice should prevail despite the easy availability of a clearly more convenient forum, the Fifth Circuit has now put that issue to rest. Because the Dallas Division is a "clearly more convenient" forum, Blockbuster respectfully requests that the Court grant its Amended Motion to Transfer Venue and all such other relief to which it may be entitled.

Respectfully submitted,

/s/ Frank C. Brame
Michael L. Raiff
  State Bar No. 00784803
Frank C. Brame
  State Bar No. 24031874
VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
214.220.7705
214.999.7705 (fax)
mraiff@velaw.com

*ATTORNEYS FOR BLOCKBUSTER INC.*

## CERTIFICATE OF CONFERENCE

    I hereby certify that, in accordance with Local Rule CV-7(h), counsel for Blockbuster has complied with the meet and confer requirement contained therein and that Blockbuster's Motion to Transfer Venue is opposed. I certify that on November 25, 2008, I personally conducted a telephone conference with Jeremy Wilson of the Corea Firm, counsel for Plaintiffs, and that counsel were not able to reach agreement on the Motion, resulting in an impasse, and leaving the issue for the Court to resolve.

                                  /s/ Frank C. Brame
                                  Frank C. Brame

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion to Transfer Venue was served by ECF on the 26th of November, 2008 on counsel of record for Plaintiffs.

/s/ Frank C. Brame
Frank C. Brame

Dallas 1494541v.1